



### LIMITED RECOURSE GUARANTY
### Project Commonly Known as
### *"Laguna Run Apartments"*

THIS LIMITED RECOURSE GUARANTY (this "***Guaranty***") is made as of July 28, 2021, by FREDRICK SCHULMAN, an individual amd MOSHE SILBER, an individual (individually and collectively, if more than one, "***Guarantor***"), to and for the benefit of KEYBANK NATIONAL ASSOCIATION, a national banking association, its successors, participants, and assigns ("***Lender***").

### RECITALS

**A.**     On or about the date hereof, Lakewood Pointe Apts LLC, a Delaware limited liability company ("***Borrower***") and Lender entered into that certain Interim Loan Agreement ("***Loan Agreement***") whereby Lender agreed to make a secured loan (the "***Loan***") available to Borrower in the maximum principal amount of TWENTY TWO MILLION FOUR HUNDRED THOUSAND and 00/100ths Dollars ($22,400,000.00), to refinance that certain Multifamily residential facility located in the City of New Orleans, Parish of Orleans (the "***Project***")

**B.**     Borrower has executed and delivered a promissory note in favor of Lender of even date herewith in the amount of the Loan (the "***Note***"), payment of which is evidenced, secured, and governed by (i) a Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing granted by Borrower in favor of Lender against the Project (the "***Security Instrument***"), and (ii) the other Loan Documents.

**C.**     Guarantor will derive material financial benefit from the Loan.

**D.**     Lender has relied on the representations, warranties, waivers, and agreements contained herein in agreeing to make the Loan.

**E.**     The execution and delivery of this Guaranty by Guarantor is a condition precedent to the Closing of the Loan.

### AGREEMENTS

NOW, THEREFORE, to induce Lender to make the Loan to Borrower and in consideration of Lender making the Loan to Borrower, Guarantor agrees as follows:

**1.**     **Definitions**.  Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Loan Agreement.  The following terms have the following definitions as used herein:

**1.1**     "***Collateral***" means the real or personal property that at any time constitutes collateral for Borrower's obligations under the Loan, including, without limitation, any rents, income, insurance proceeds, condemnation awards, or other value arising from such property.

**1.2**     Reserved.

---

**1.3** *"Enforcement Costs"* means all fees, costs, and expenses incurred in connection with Lender's enforcement of this Guaranty, including, without limitation, Legal Expenses incurred in connection with such enforcement, and interest thereon at the Default Rate.

**1.4** *"Guaranteed Obligations"* has the meaning given in Section 2.

**1.5** *"Indebtedness"* means all amounts due Lender under Sections 2.1 and 2.2.

**1.6** *"Limited Recourse Amount"* means an amount equal to the total of: (i) Twenty Five percent (25%) of the principal amount of the Indebtedness (whether outstanding or undisbursed) as of the occurrence of the Event of Default forming the basis for a demand by Lender hereunder, *plus* (ii) all amounts in excess of the maximum principal amount of the Note advanced to cure any Default or Event of Default or to protect the value or priority of Lender's security for the Loan, *plus* (iii) all interest due Lender under the Loan Documents at the Applicable Rate(s) or Default Rate, as applicable, *plus* (iv) all Enforcement Costs.

**1.7** *"Loan Documents"* means the Loan Agreement, Note, Security Instrument, and all other agreements and instruments that evidence, secure, or otherwise govern the Loan, but excluding the Environmental Indemnity Agreement.

**1.8** *"Other Guarantor"* means any guarantor of all or some of the Guaranteed Obligations that is not a party to this Guaranty.

**1.9** *"Recourse Amounts"* has the meaning given in Section 3.2.

**1.10** *"Recourse Events"* means the events triggering full recourse of the applicable Guaranteed Obligations pursuant to Section 3.2.

**1.11** *"Springing Recourse Events"* means the events triggering full and unlimited recourse against Guarantor for the entire amount of the Indebtedness pursuant to Section 3.1.

**2.     Unconditional Guaranty of Payment and Performance.**  Subject to the limitations on personal recourse set forth in Section 3, Guarantor absolutely, unconditionally, and irrevocably guarantees the following obligations (collectively, the "**Guaranteed Obligations**"):

**2.1**     the full and prompt payment of all amounts payable by Borrower to Lender under the Loan Documents;

**2.2**     the prompt payment of all obligations of Borrower to Lender arising from any interest rate hedging program, including, without limitation, any interest rate swap, cap, or such other interest rate protection product, whether now existing or entered into hereafter (each an "***Interest Rate Protection Product***"), including, without limitation, any Cash Settlement Amount or any payments on Early Termination payable by Borrower under any Swap Transaction or Confirmation; *provided, however*, the term "Interest Rate Protection Product" shall not include any interest rate swap, cap, or other interest rate protection product if, at the time Borrower enters into any such product, it is unlawful for Guarantor to guarantee the obligations of Borrower thereunder.  Capitalized terms used in this subsection 2.2 but not otherwise defined in this Guaranty or in the Loan Agreement are defined in the *2006 ISDA Definitions* published by the International Swap and Derivatives Association, Inc.; and

**2.3**     the full, complete, and punctual performance and satisfaction of all of Borrower's obligations under the Loan Documents and any Interest Rate Protection Product.

**3.** **Recourse Limitations.** Subject to the exceptions described in Sections 3.1 (the Springing Recourse Events) and 3.2 (the Recourse Events), and without in any way limiting Lender's right to pursue judgments that may be necessary or appropriate to foreclose its liens against or otherwise realize the value of any Collateral, Lender's right to pursue any judgment of personal liability against Guarantor hereunder, including any deficiency judgment, shall be limited to the Limited Recourse Amount.

**3.1** Notwithstanding the limitation on Guarantor's personal liability set forth in this Section 3, Lender shall have full and unlimited recourse against Guarantor for the entire amount of the Indebtedness if any of the following Springing Recourse Events occurs:

**3.1.1** Borrower, any Guarantor, or any Other Guarantor, or any agent, employee, or other person with actual or apparent authority to make statements on behalf of any of them, commits fraud or intentionally misrepresents material facts in connection with Lender's underwriting, approval, or administration of the Loan;

**3.1.2** Borrower, any Guarantor, any Other Guarantor, or any trustee of Borrower or any such guarantor: (a) files a petition in bankruptcy or for an arrangement, reorganization, or any other form of debtor relief, or such a petition is filed against Borrower, any Guarantor, any Other Guarantor, or any trustee of Borrower, Guarantor, or any Other Guarantor, and such petition is not dismissed within sixty (60) days after the date of filing; (b) commences any proceeding for dissolution as an entity or liquidation, or any such proceeding is commenced against any such party that is not dismissed within sixty (60) days after the date of commencement; or (c) makes an assignment of all or substantially all of its assets for the benefit of its creditors;

**3.1.3** Any Event of Default results directly or indirectly from the gross negligence or willful misconduct of Borrower, any Guarantor, any Other Guarantor, or any of their agents, representatives, or employees; or

**3.1.4** The Collateral is transferred or encumbered in violation of any of the restrictions on transfer or encumbrance contained in the Loan Documents.

**3.2** Notwithstanding the recourse limitations otherwise applicable hereunder, and in addition to Lender's absolute right to recover the Limited Recourse Amount under this Guaranty, Guarantor shall be required to hold harmless, defend, and indemnify Lender from and against, and Lender shall have recourse against Guarantor for, any actual losses, damages, costs, expenses, and liabilities ("***Recourse Amounts***") arising out of or in any way related to the occurrence of any of the following Recourse Events:

**3.2.1** Borrower, any Guarantor, or any Other Guarantor misapplies, misappropriates, or fails to remit to Lender any insurance proceeds or condemnation proceeds involving the Collateral, or the Collateral suffers a loss or casualty that is uninsured due to Borrower's failure to maintain the insurance policies required under the Loan Documents;

**3.2.2** Borrower fails to maintain the insurance required by the Loan Agreement or to pay taxes and assessments, or to pay charges for labor or materials or other charges or judgments that can create liens on any portion of the Collateral, unless (a) Lender is escrowing funds therefor and fails to make payments Lender is required to make in accordance with the Loan Documents or (b) Lender has taken possession of the Project following an Event of Default, has received all rents, issues, and profits from the Project applicable to the period for which such insurance, taxes, or other items are due, and thereafter fails to make such payments;

**3.2.3**  Any security deposit, advance deposit, or any other deposit collected with respect to the Project is not delivered to Lender upon a foreclosure of the Collateral or action in lieu thereof, except to the extent any such deposits were applied in accordance with the terms and conditions of any of the applicable Leases prior to the occurrence of the Event of Default that gave rise to such foreclosure or action in lieu thereof;

**3.2.4**  Borrower, any Guarantor, or any Other Guarantor, or any of their agents, representatives, or employees, misapplies, misappropriates, or embezzles Loan proceeds or proceeds of the sale of any portion of the Collateral;

**3.2.5**  Sales proceeds, rents, issues, profits, revenues, or other proceeds of the Collateral that are available and required to be paid to Lender under the Loan Documents are instead disbursed to Borrower, Borrower's Affiliates, any Guarantor, any Other Guarantor, or any third party, or are otherwise used for any purpose other than making required payments to Lender;

**3.2.6**  Borrower, any Guarantor, or any Other Guarantor breaches any provision of the Loan Documents regarding the use, preservation, maintenance, removal, or disposal of the Collateral;

**3.2.7**  The Collateral suffers material physical waste;

**3.2.8**  Any representation or warranty contained in any of the Loan Documents proves to have been materially untrue when made or re-made; or

**3.2.9**  Borrower, any Guarantor, or any Other Guarantor breaches any covenant concerning Hazardous Material or Building Laws contained in the Loan Documents.

**3.3**  The limitations on recourse set forth in this Section 3 shall not: (i) be deemed a release or impairment of any part of the Indebtedness, the Security Instrument, or any Collateral for the Loan; (ii) limit or otherwise prejudice in any way Lender's rights to enforce any of its rights and remedies under any of the other Loan Documents, including, if necessary, naming Borrower or Guarantor as a defendant in any suit, action or proceeding; (iii) limit Lender's right to proceed and recover a personal judgment against any person or entity receiving funds from Borrower, Guarantor, or any Other Guarantor in an improper manner; or (iv) limit the liability of Borrower, Guarantor, or any Other Guarantor under any Environmental and Building Laws Indemnity Agreement or any other independent indemnity agreement executed in connection with the Loan.

**4.**  **Representations and Warranties.**

**4.1**  Guarantor makes the following representations and warranties to Lender as of the Closing of the Loan, and acknowledges that, but for the truth and accuracy of the following representations and warranties, Lender would not have agreed to make the Loan:

**4.1.1**  Reserved.

**4.1.2**  Guarantor maintains an office at its address for receipt of notices identified in Section 21.

**4.1.3**  Any and all balance sheets, net worth statements, and other financial data of Guarantor provided to Lender by or on behalf of Guarantor fairly and accurately present the financial condition of Guarantor as of the respective dates thereof.

**4.1.4**   The execution, delivery, and performance by Guarantor of this Guaranty do not and will not contravene or conflict with (i) any Laws, (ii) any writ, injunction, or decree of any Governmental Authority, or court having jurisdiction over Guarantor, (iii) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty, (iv) the instruments creating any trust holding title to any assets included in Guarantor's financial statements, or (v) Guarantor's organizational documents or other documents governing Guarantor.

**4.1.5**   Guarantor has full power and authority to execute, deliver, and perform its obligations under this Guaranty and all other Loan Documents to which Guarantor is a party, and such execution, delivery, and performance have been duly authorized by all requisite action on the part of Guarantor.

**4.1.6**   This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms.

**4.1.7**   Except as disclosed in writing to Lender, there is no action, proceeding, or investigation pending or, to Guarantor's knowledge, threatened or affecting Guarantor, that may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty. There are no judgments, or orders for the payment of money rendered against Guarantor for an aggregate amount in excess of Two Hundred Fifty Thousand Dollars ($250,000), that have been undischarged for a period of ten (10) or more consecutive days and the enforcement of which is not stayed by reason of a pending appeal or otherwise.

**4.1.8**   No default exists under any agreement to which Guarantor is a party that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty.

**4.1.9**   Guarantor is fully aware of the financial condition of Borrower and is signing and delivering this Guaranty based solely upon Guarantor's own independent investigation of all matters regarding Borrower, the Loan, and the Project, and Guarantor is not relying in any manner upon any representation or statement made by Lender or Lender's Affiliates.

**4.1.10**   All statements set forth in the Recitals are true and correct.

**4.2**   All of the foregoing representations and warranties shall be deemed remade on the date of the first disbursement of proceeds of the Loan, on the date of each advance of proceeds of the Loan, and upon any extension of the Loan pursuant to the Loan Agreement.

**4.3**   Guarantor hereby agrees to hold harmless, indemnify, and defend Lender from and against all losses, damages, costs, expenses, injuries, and liabilities, including Legal Expenses, that Lender may suffer or incur by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade. The limitations on recourse provided herein shall not apply to Guarantor's indemnification and defense obligations under this Section.

**5.**   **Financial Covenants and Reporting.**  Guarantor shall comply with all financial covenants and financial reporting requirements applicable to Guarantor that are set forth in the Loan Agreement, and shall provide to Lender a certificate of compliance in the form of EXHIBIT A attached hereto, when due. Failure to comply with the financial covenants and reporting requirements shall constitute an immediate Event of Default under the Loan Documents.

**6.      Payment and Performance by Guarantor**.  Upon the occurrence of an Event of Default under the Loan Documents, Guarantor agrees to pay or perform the Guaranteed Obligations including any Recourse Amounts, as applicable, immediately on demand by Lender, regardless of any defense, right of setoff, or claims Borrower or Guarantor may have against Lender.

**7.      Remedies.**  All of the remedies set forth herein, in any of the Loan Documents, at law, or in equity shall be equally available to Lender, and the choice by Lender of one such alternative over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Lender to recover amounts due Lender or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy.  The parties have agreed to the alternative remedies provided herein in part because they recognize that the choice of remedies following the occurrence of an Event of Default will necessarily be and should properly be a matter of good faith business judgment, which the passage of time and events may or may not prove to have been the best choice to maximize recovery by Lender at the lowest cost to Borrower or Guarantor.  It is the intention of the parties that such good faith choice by Lender be given conclusive effect regardless of such subsequent developments.

**8.      Waivers**.  Guarantor unconditionally waives the following: (a) notice of acceptance of this Guaranty by Lender; (b) all notices and demands of every kind that may be required to be given by applicable Law, including, without limitation, any demand, proof, or notice of non-payment or non-performance of any Guaranteed Obligations; (c) prior to repayment in full of the Indebtedness, any defense, right of setoff or other claim that Guarantor may have against Borrower; (d) any defense, right of setoff or other claim Guarantor or Borrower may have against Lender; (e) any and all rights Guarantor may have under any anti-deficiency statute or other similar protections, and Guarantor agrees that Lender may pursue a deficiency judgment against Guarantor following foreclosure or acceptance of a deed in lieu of foreclosure; (f) presentment for payment, demand for payment, notice of nonpayment or dishonor, notice of non-performance, protest and notice of protest, diligence in collection, diligence in protection or realization upon the Collateral, and any and all formalities that otherwise might be legally required to charge Guarantor with liability; (g) any failure by Lender to inform Guarantor of any facts Lender may now or hereafter know about Borrower, the Project, the Loan, or the transactions contemplated by the Loan Agreement; (h) any requirement that Lender act with diligence in enforcing its rights under the Loan Documents or this Guaranty; (i) any right to require Lender to proceed against or exhaust its recourse against Borrower, any Other Guarantor, any other person or entity, or any security or Collateral, or to pursue any other remedy in its power, before being entitled to payment from Guarantor under this Guaranty or before proceeding against Guarantor; (j) any defense based upon election of remedies by Lender that destroys or otherwise impairs the subrogation rights of Guarantor or Guarantor's right (after payment of the Guaranteed Obligations including any Recourse Amounts) to proceed against Borrower or any other person or entity for reimbursement; (k) any defense of the statute of limitations in any action against Guarantor under this Guaranty; (l) any defense based upon the addition, substitution or release, in whole or in part, of any person or entity primarily or secondarily liable for or in respect of the Guaranteed Obligations, the Recourse Events, or the Springing Recourse Events; and (m) any and all rights to require marshalling of assets by Lender.

**9.      Condition of Borrower**.  Credit may be granted or continued from time to time by Lender to Borrower without notice to or authorization from Guarantor, regardless of the financial or other condition of Borrower at the time of any such grant or continuation.  Lender shall have no duty to disclose or discuss any information to Guarantor about Borrower, the Project, or the Loan.  Guarantor is fully responsible for being and remaining informed by Borrower of all circumstances bearing on the risk of nonperformance of Borrower's obligations.  By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of this type, which risks Guarantor acknowledges and understands.

**10.** **No Impairment of Guarantor's Liability.**

**10.1** Guarantor's liability hereunder shall not be impaired, released, discharged, or otherwise affected by (a) any renewals or extensions of the Loan, with or without Guarantor's knowledge or consent; (b) any forbearance or delay in collecting interest or principal under the Note; (c) any waiver by Lender under any of the Loan Documents; (d) Lender's failure or election not to pursue any other remedies it may have against Borrower, any Guarantor, or any Other Guarantor; (e) any change or modification to any of the Loan Documents, including, without limitation, any increase in the Loan amount or applicable interest rate; (f) the acceptance by Lender of any additional Collateral, or any increase, substitution, or change therein; (g) the release by Lender of any Collateral, or any withdrawal thereof or decrease therein; (h) the incapacity, lack of authority or disability of any Guarantor or any Other Guarantor or the failure of Lender to file or enforce a claim against the estate of any Guarantor or any Other Guarantor; (i) the failure of any Other Guarantor to execute its guaranty, or by reason of the fact that any of the Collateral may be in default at the time of acceptance thereby by Lender or later, or by reason of the fact that a valid lien in any of the Collateral may not be conveyed to or created in favor of Lender; (j) the fact that the Collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; (k) the fact that any of the Indebtedness or the Guaranteed Obligations may be invalid for any reason whatsoever; (l) the fact that the value of any of the Collateral may not have been correctly estimated or may have changed or may hereafter change for any reason, including, without limitation, deterioration, waste, fire, theft, market conditions, or otherwise; (m) the fact that the financial condition of Borrower, any Guarantor, any Other Guarantor, or any obligor of any of the Guaranteed Obligations or Indebtedness may not have been correctly estimated or may have changed or may hereafter change; or (n) the application of payments received from any source to the payment of any obligation other than amounts due under the Loan Documents even though Lender might lawfully have elected to apply such payments to any part or all of the Indebtedness.

**10.2** Guarantor shall remain liable for payment and performance of the Guaranteed Obligations until the Indebtedness has been paid in full, notwithstanding anything that might otherwise operate as a legal or equitable discharge of a surety.

**10.3** Guarantor understands and agrees that Lender may at any time enter into agreements with Borrower to amend and modify the Loan Documents, and may waive or release any provision of the Loan Documents, and may make and enter into any agreement as Lender and Borrower may deem proper and desirable with respect to the Loan Documents, without in any manner impairing or affecting this Guaranty or any of Lender's rights or Guarantor's obligations hereunder.

**11.** **Guarantor's Obligations Are Absolute.** This is an absolute, present, and continuing guaranty of payment and not of collection. This Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any Collateral through foreclosure or sale proceedings, as the case may be, under the Security Instrument or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower or any Other Guarantor in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all rights and remedies available to Lender at law or in equity or under any of the Loan Documents. Lender's exercise of any of its rights or remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent, and unconditional under any and all circumstances whatsoever. None of Guarantor's obligations under this Guaranty nor any of Lender's rights or remedies shall be impaired, modified, changed, or released in any manner whatsoever by any impairment, modification, change, release, or limitation of Borrower's liability under any of the

Loan Documents or by reason of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower, any Guarantor, or any Other Guarantor.

**12.** **Obligations Not Affected by Insolvency**. This Guaranty shall continue to be effective or shall be reinstated (as the case may be) if any full or partial payment of the Indebtedness is rescinded, invalidated, declared fraudulent, set aside, determined void or voidable as a preference, fraudulent conveyance, impermissible setoff, or diversion of trust funds, or is otherwise required to be returned by Lender in connection with the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower, any Guarantor, or any Other Guarantor, or upon or as a result of the appointment of a receiver, intervenor, custodian or conservator of or trustee or similar officer for, Borrower, any Guarantor, or any Other Guarantor or any substantial part of its property, or otherwise, all as though such payment to Lender had not been made, regardless of whether Lender contested the order requiring the return of such payment. In addition, Guarantor shall pay or reimburse Lender for all expenses (including all Legal Expenses) incurred by Lender in the defense of any claim that a payment received by Lender in respect of all or any part of the Guaranteed Obligations, including any Recourse Amounts, must be refunded. The provisions of this Section shall survive the termination of this Guaranty and any satisfaction and discharge of Borrower by virtue of any payment, court order, or any applicable Laws. The limitations on recourse provided herein shall not apply to Guarantor's obligation to reimburse Lender pursuant to this Section.

**13.** **Application of Payment.** Lender may apply any amounts received on account of the Loan from any source to the Indebtedness or any other obligations of Borrower to Lender in such order as Lender may elect in its discretion. Any amounts received by Lender from Guarantor shall not reduce Guarantor's personal liability hereunder absent Lender's prior written consent, but shall instead be applied to the Indebtedness. Lender may reject and return any payment tendered by Guarantor prior to an Event of Default without Lender's prior written consent. Additionally, if the Indebtedness guaranteed hereby is less than the full indebtedness evidenced by the Loan Documents, all rents, issues, profits, and proceeds of the Project, including proceeds from realization of the Collateral, shall be deemed applied to indebtedness of Borrower to Lender under the Loan Documents that is not guaranteed by Guarantor until such unguaranteed indebtedness of Borrower to Lender has been fully repaid before being applied to indebtedness guaranteed by Guarantor.

**14.** **Assignment**. Lender may, without notice to Guarantor, assign, participate, syndicate, or transfer the Loan, in whole or in part. In such event, each assignee, transferee, or holder of all or any part of the Loan may enforce this Guaranty, but Lender shall have an unimpaired right to enforce this Guaranty for its benefit as to any portion of the Loan that Lender retains. If Lender pledges or assigns the Note to any creditor as security for an obligation of Lender, such creditor may enforce this Guaranty to the same extent as would have been enforceable by Lender but for such pledge or assignment; *provided, however,* that unless Lender otherwise consents in writing, Lender shall have an unimpaired right, prior and superior to that of its creditor, to enforce this Guaranty for Lender's benefit to the extent any portion of the Indebtedness or any interest therein is not pledged or assigned.

**15.** **Enforcement Costs**. In addition to all other amounts due Lender hereunder, Guarantor shall pay Enforcement Costs to Lender, upon demand, if any of the following occurs: (a) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (b) an attorney is retained to represent Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (c) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (d) an attorney is retained to represent Lender in any proceedings whatsoever in connection with this Guaranty and Lender prevails in any such proceedings. The limitations on recourse provided herein shall not apply to Enforcement Costs, and Guarantor shall be obligated to pay any and all Enforcement Costs incurred by Lender.

**16.    Indemnification and Defense Obligations.**  If a claim arises for which Guarantor has a duty to defend Lender under this Guaranty or any of the other Loan Documents to which Guarantor is a party, Lender shall have the right to choose its own legal counsel (at Guarantor's expense) and make all decisions relating to its defense, including, without limitation, the litigation strategy and the terms of any settlement.

**17.    Severability.**  Each provision in this Guaranty is intended to comply with all applicable Laws.  However, if a court of competent jurisdiction holds that any provision of this Guaranty, or any portion thereof, is illegal, invalid, unlawful, void, or otherwise unenforceable as written, (i) such provision, or portion thereof, shall be given force and effect to the fullest possible extent permitted under applicable Laws, (ii) this Guaranty shall be construed as if the illegal, invalid, unlawful, void, or otherwise unenforceable provision or portion thereof was not contained herein, and (iii) the rights, obligations, and interests of Guarantor and Lender shall continue in full force and effect to the fullest extent permitted under applicable Laws.

**18.    Jurisdiction and Venue.  WITH RESPECT TO ANY SUIT, ACTION, OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A *"PROCEEDING"*), GUARANTOR IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF NEW YORK AND STATE OF NEW YORK, (B) WAIVES ANY OBJECTION IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, (C) WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (D) WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION.**

**19.    Subordination.**

 **19.1**    Any indebtedness of Borrower to Guarantor now or hereafter existing (the *"Subordinate Debt"*) is hereby subordinated to payment of the Indebtedness.  Guarantor agrees that, until all of the Guaranteed Obligations have been fully satisfied, including payment of all Recourse Amounts, Guarantor will not (a) seek, accept, or retain for its own account, any payment from Borrower on account of the Subordinate Debt, (b) declare due or accelerate the maturity of any Subordinate Debt, (c) take any actions to enforce or collect any Subordinate Debt or any part thereof or realize upon any collateral securing Subordinate Debt, or (d) act as a petitioning creditor in any bankruptcy, reorganization, insolvency, receivership, or dissolution proceeding involving Borrower (each such proceeding, a *"Bankruptcy Proceeding"*).

 **19.2**    Any payments to Guarantor on account of the Subordinate Debt shall be collected and received by Guarantor in trust for Lender and shall be paid over to Lender for application to the Indebtedness in such order as Lender may elect without impairing or releasing the obligations of Guarantor hereunder, including, without limitation, any payment, dividend, or distribution received by Guarantor in any Bankruptcy Proceeding,

 **19.3**    Guarantor hereby irrevocably nominates, constitutes and appoints Lender as Guarantor's true and lawful attorney-in-fact with full power of substitution and authority to appear on Guarantor's behalf and its place and stead in any Bankruptcy Proceeding for the purpose of filing proof of Guarantor's claim for any Subordinate Debt owed to Guarantor, or any part thereof, to vote the claims of

the indebtedness constituting such Subordinate Debt, and prosecuting such claim and collecting any creditors' dividend or other payment made in respect of such Subordinate Debt. Guarantor agrees to cooperate with any and all requests by Lender in connection with any such Bankruptcy Proceedings and to do such other acts and things and deliver, or cause to be delivered, such other documents as Lender may reasonably request to effect the intent and purpose of this Section 19.

**20.    Jury Trial Waiver.  GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR RELATING THERETO OR ARISING FROM THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS GUARANTY AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

**21.    Notice**.  Any notice, demand, request, or other communication that any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three Business Days after mailing; (c) if by Federal Express or other nationally recognized overnight courier service, on the next Business Day after delivered to such courier service for delivery on the next Business Day; or (d) if by e-mail transmission, on the day of transmission so long as a copy is sent on the same day by Federal Express or other nationally recognized overnight courier, to the addresses set forth below, or at such other address as the party to be served with notice has furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice:

    If to Guarantor:

        Fredrick Schulman
        7001 Martin Drive
        New Orleans, LA  70126
        Attention: N/A

        Moshe Silber
        25 Hidden Valley Drive
        Suffern, NY 10901
        Attention: N/A

    If to Lender:

        KeyBank National Association
        66 South Pearl Street, 7th Floor
        Mail Code NY-31-66-0767
        Albany, NY 12207
        Reference: Lakewood Pointe Apts LLC & Loan No. 10219224

**22.    Successors and Assigns.**  This Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of Guarantor and shall not be discharged in whole or in part by the death, incapacity, or dissolution of Guarantor or of any principal of Guarantor.

**23.    Joint and Several Liability.**  The liability of each Guarantor and any Other Guarantors shall be joint and several. If any Guarantor is an individual and resides in a community property state, then, unless such Guarantor's obligations hereunder are otherwise limited by a specific annotation either on the

first page of this Guaranty or following Guarantor's signature below, any married person or registered domestic partner who signs this Guaranty warrants that it is an obligation incurred on behalf of his or her marital community/domestic partnership and agrees that this Guaranty shall bind the marital community/domestic partnership. Lender may join each Guarantor in any suit in connection with the Loan Documents or proceed against any Guarantor in a separate action.

**24.    Further Assurances.** Guarantor agrees at any time upon Lender's request to take, or cause to be taken, any action and to execute and deliver any additional documents that, in Lender's reasonable opinion, may be necessary to assure to Lender the full benefits of this Guaranty.

**25.    Governing Law.    THIS GUARANTY, THE NOTE, AND ALL OTHER INSTRUMENTS EVIDENCING AND SECURING THE LOAN WERE NEGOTIATED IN THE STATE OF NEW YORK, AND DELIVERED BY GUARANTOR OR BORROWER, AS APPLICABLE, AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND THE UNDERLYING TRANSACTIONS EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, INTERPRETATION AND PERFORMANCE OF THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER, THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.**

**26.    Disposition of Loan Proceeds.** Lender shall be entitled to honor any request for proceeds of the Loan made by Borrower and shall have no obligation to see to the proper disposition of such disbursements.  Guarantor agrees that Guarantor's obligations hereunder shall not be released or affected by reason of any improper disposition by Borrower of such disbursements.

**27.    No Modification or Waiver.** No modification or waiver of any of the provisions of this Guaranty shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered by Lender.

**28.    Counterparts.** This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

**29.    Electronic Signatures.** The electronic signature of a party to this Guaranty shall be as valid as an original signature of such party and shall be effective to bind such party to this Guaranty.  The parties agree that any electronically signed document (including this Guaranty) shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.  Such paper copies or "printouts," if introduced as evidence in any proceeding, will be admissible as between the parties to the same extent and under the same conditions as other original business records created and maintained in documentary form.  Neither Guarantor nor Lender shall contest the admissibility of true and accurate copies of electronically signed documents on the basis of the best evidence rule or as not satisfying the business records exception to the hearsay rule.  For purposes hereof, "electronic signature" means a manually signed original signature that is then transmitted via the internet as a "pdf" (portable document format) or other replicating image attached to an e-mail message, and "electronically signed document" means a document transmitted via e-mail containing an electronic signature.

**30.** **Credit Verification**. Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, general partner of a Guarantor or in any other capacity, hereby authorizes Lender, its employees, agents, successors, assigns and Affiliates, to (i) obtain credit reports from credit reporting agencies of Lender's choice and check credit references until repayment in full of the Loan, (ii) obtain other information regarding Guarantor's deposit accounts, income, credit, employment, and business relationships in connection with any monitoring, collection, or future transaction concerning the Guaranteed Obligations, including any modification, extension, restatement or renewal of the Guaranteed Obligations, and (iii) verify such reports and information.

**31.** **Other Definitional Provisions**. The words "hereof," "herein," and "hereunder," and words of similar import when used in this Guaranty shall refer to this Guaranty. The word "or" has the inclusive meaning represented by the phrase "and/or". All references to "Sections" shall mean the Sections of this Guaranty unless otherwise stated.

**32.** **State-Specific Provisions.** The following state-specific terms and conditions shall control over any inconsistent provisions of this Guaranty:

**32.1** **Guarantor Waivers.** Guarantor hereby waives:

**32.1.1** the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or guarantor);

**32.1.2** the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors;

**32.1.3** diligence in collecting the Indebtedness, presentment, demand for payment, protest and all notices with respect to the Loan Documents and this Guaranty which may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of acceptance, notice of any amendment of the Loan Documents, notice of the occurrence of any Event of Default, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest and notice of the incurring by Borrower of any obligation or indebtedness; and

**32.1.4** all rights to require Lender to:

**32.1.4.1** proceed against or exhaust any collateral held by Lender to secure the repayment of the indebtedness.

**32.1.4.2** proceed against or pursue any remedy it may now or hereafter have against Borrower or any guarantor, or, if Borrower or any guarantor is a partnership, any general partner of Borrower or general partner of any guarantor; or

**32.1.4.3** demand or require collateral security from Borrower, any other guarantor or any other Person as provided by applicable law or otherwise.

**[Remainder of page intentionally left blank; signature(s) appear on the following page].**

Executed as of the date of this Guaranty.

**GUARANTOR:**

By: _____

Name:  Fredrick Schulman

**GUARANTOR:**

By: _____
Name:  Moshe Silber

**EXHIBIT A**

**Guarantor's Certificate of Compliance**

KeyBank National Association
66 South Pearl Street, 7th Floor
Mail Code NY-31-66-0767
Albany, NY 12207
Attn: alan_isenstadt@keybank.com

Re:    Loan Agreement dated as of July 28, 2021 (as amended, modified, supplemented, restated, or renewed, from time to time, the "***Agreement***"), between **LAKEWOOD POINTE APTS LLC**, a Delaware limited liability company ("***Borrower***"), and **KEYBANK NATIONAL ASSOCIATION** ("***Lender***"), and the Limited Recourse Guaranty made by FREDRICK SCHULMAN and MOSHE SILBER ("***Guarantor***") for the benefit of Lender dated as of July 28, 2021 (the "***Guaranty***").

Reference is made to the Agreement and the Guaranty. Capitalized terms used in this Certificate of Compliance (including schedules and other attachments hereto, this "***Certificate***") without definition have the meanings specified in the Agreement and the Guaranty.

Pursuant to applicable provisions of the Agreement and the Guaranty, the undersigned, being the authorized representative of Guarantor, hereby certifies to Lender that the information provided in this Certificate, including each of the calculations listed below, and all information in the attached schedules, is true, correct, and complete in all material respects as of the last day of the reporting period, and as of the last day of the fiscal periods for the financial statements submitted to Lender in connection herewith.

The undersigned hereby further certifies to Lender that:

1.    <u>Compliance with Financial Covenants</u>. As shown below, Guarantor is in full compliance with the Financial Covenants contained in the Agreement and the Guaranty.

      A.    **COVENANT: Guarantor's Net Worth Covenant of not less than $45,000,000.00, tested annually.**

            **<u>Guarantor's Calculation:</u>**

            Guarantor Net Worth = The gross fair market value of the Guarantor's Total Assets less its Total Liabilities (and may be identified on the applicable party's financial statements as "Shareholder Equity," "Retained Earnings," or "Member Equity").

            Guarantor Net Worth _____ for period ending _____

            Compliance? (Yes or No)    _____

    **B.**     **Covenant:  Guarantor Liquidity to be not less than $3,500,000.00, tested annually.**

    <u>**Guarantor's Calculation:**</u>

Liquidity = The sum of cash, cash equivalents, and marketable securities (which must be listed on a notable exchange) held by Guarantor and immediately available with unimpaired value, excluding margined assets, pledged cash, pledged cash equivalents, and pledged marketable securities, and excluding the cash value of life insurance policies, IRA, 401(k), annuity, and other retirement accounts, as well as assets held in trust for third parties.

Guarantor Liquidity_____  for period ending _____

Compliance? (Yes or No)       _____

**2.**    <u>Review of Condition</u>.  The undersigned has reviewed the terms of the Agreement and Guaranty, including the representations, warranties, and covenants of or relating to Guarantor set forth therein, and has made, or caused to be made under his or her supervision, a review in reasonable detail of the transactions and condition of Guarantor through the applicable reporting periods.

**3.**    <u>Representations and Warranties</u>.  To the undersigned's actual knowledge, the representations and warranties of or relating to Guarantor contained in the Loan Documents, including those contained in the Agreement and Guaranty, are true and accurate in all material respects as of the date hereof, and were true and accurate in all material respects at all times during the reporting period, except as expressly noted on SCHEDULE A hereto.

**4.**    <u>Covenants</u>.  To the undersigned's actual knowledge, during the reporting period, Guarantor observed and performed all of the respective covenants and other agreements under the Agreement, Guaranty, and other Loan Documents to be performed by Guarantor, and satisfied each of the conditions contained therein to be observed, performed, or satisfied by Guarantor, except as expressly noted on SCHEDULE A hereto.

**5.**    <u>No Event of Default</u>.  To the undersigned's actual knowledge, no Default or Event of Default under the Loan Documents exists as of the date hereof or existed at any time during the reporting period, except as expressly noted on SCHEDULE A hereto.

**6.**    <u>Representative Capacity</u>.  The undersigned represents and warrants to Lender that he or she is authorized, in the capacity designated below his or her name, to complete, execute, and deliver this Certificate.

This Certificate is executed by the undersigned this _____ day of_____.


_____
Name: Fredrick Schulman


_____
Name: Moshe Silber



# PERFORMANCE AND COMPLETION GUARANTY
## Project Commonly Known as
### *"Laguna Run Apartments"*

## RECITALS

THIS PERFORMANCE AND COMPLETION GUARANTY (this *"Guaranty"*) is made as of January 26, 2023, by FREDRICK SCHULMAN, and individual, and MOSHE SILBER, an individual (individually and collectively, if more than one, *"Guarantor"*), to and for the benefit of KEYBANK NATIONAL ASSOCIATION, a national banking association, its successors, participants, and assigns (*"Lender"*).

## RECITALS

**A.**    On    or    about    July    28,    2021,    Lakewood    Pointe    Apts    LLC a Delaware limited liability company (*"Borrower"*) and Lender entered into that certain Interim Loan Agreement (the **"Original Loan Agreement"**) as amended by an Insurance Proceeds Letter dated July 17, 2022, an additional Insurance Proceed Letter dated December 12, 2022 (collectively the **"Insurance Proceeds Letters"**) and an Amendment to Loan Documents dated of even date herewith entered into by and between Borrower, Lender, and Guarantor (the **"Amendment to Loan Documents"**; and together with the Original Loan Agreement and each of the Insurance Proceeds Letters, collectively the *"Loan Agreement"*) whereby Lender agreed to make a secured loan (the *"Loan"*) available to Borrower in the maximum principal amount of TWENTY TWO MILLION FOUR HUNDRED THOUSAND and No/100ths Dollars ($22,400,000.00), to finance the acquisition of the multifamily residential facility located in the city of New Orleans, Orleans Parish, Louisiana (the *"Project"*).

**B.**    Borrower has executed and delivered a promissory note in favor of Lender of even date herewith in the amount of the Loan (the *"Note"*), payment of which is evidenced, secured, and governed by (i) a Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing granted by Borrower in favor of Lender against the Project (the *"Security Instrument"*), and (ii) the other Loan Documents.

**C.**    Guarantor derived material financial benefit from the Loan.

**D.**    Borrower has agreed to make certain renovations, restoration and repairs to the Project as more fully set forth and described in the Loan Agreement, including but not limited to the Insured Loss described in the Insurance Proceeds Letters and the renovations described in the Financial Reporting/Financial and Performance Related Covenants set forth in the Loan Agreement (collectively the "Renovations").

**E.**    Lender has relied on the representations, warranties, waivers, and agreements contained herein in agreeing to the Amendment to Loan Documents described above.

**F.**    The execution and delivery of this Guaranty by Guarantor is a condition precedent to the execution and delivery of the Amendment to Loan Documents dated of even date herewith.

**Keycorp Confidential**

*140235294.6*

## AGREEMENTS

NOW, THEREFORE, to induce Lender to make the Loan to Borrower and in consideration of Lender making the Loan to Borrower, Guarantor agrees as follows:

    **1.**    **Definitions.** Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Loan Agreement. The following terms have the following definitions as used herein:

        **1.1**    *"Collateral"* means the real or personal property that at any time constitutes collateral for Borrower's obligations under the Loan, including, without limitation, any rents, income, insurance proceeds, condemnation awards, or other value arising from such property.

        **1.2**    *"Enforcement Costs"* means all fees, costs, and expenses incurred in connection with Lender's enforcement of this Guaranty, including, without limitation, Legal Expenses incurred in connection with such enforcement, and interest thereon at the Default Rate.

        **1.3**    *"Guaranteed Obligations"* means the obligations of Guarantor under Sections 2.1, 2.2, and **Error! Reference source not found.**.

        **1.4**    *"Indebtedness"* means all amounts due Lender under the Loan Documents.

        **1.5**    *"Loan Documents"* means the Loan Agreement, Note, Security Instrument, and all other agreements and instruments that evidence, secure, or otherwise govern the Loan, but excluding the Environmental Indemnity Agreement.

        **1.6**    *"Other Guarantor"* means any guarantor of all or some of the Guaranteed Obligations or Indebtedness that is not a party to this Guaranty.

    **2.**    **Unconditional Guaranty of Performance and Completion.** Guarantor, absolutely, unconditionally, and irrevocably guarantees the following Guaranteed Obligations:

        **2.1**    The full, complete, and punctual performance and satisfaction of all of Borrower's obligations under the Loan Documents with respect to the Renovations and the completion of the Project free of any claim for Renovation liens, mechanics' liens, or any other liens, and in accordance with (a) all Laws, (b) the plans and specifications for the Renovations ("Plans and Speculations"), and (c) the time periods and other requirements set forth in the applicable Loan Documents, including, without limitation, the following obligations:

        **2.1.1**    The obligation to perform and complete (or cause to be performed and completed) the Renovations and to pay all costs of the Renovations (including any and all cost overruns) and all other costs associated with the Project (including, without limitation, the costs of any architects' and engineers' fees), if Borrower fails to perform, complete, or pay for such work in accordance with the terms of the Loan Agreement, whether or not the Renovations are ever completed; provided that Lender continues to make the proceeds of insurance payable in connection with the Renovations available to Guarantor as and only to the extent provided in the Loan Agreement and so long as the conditions required for disbursement of such proceeds are satisfied in accordance with the terms of the Loan Agreement;

        **2.1.2**    The obligation to reimburse Lender for all costs and expenses incurred by Lender to take possession of the Project and to complete the Renovations (or to have a receiver appointed

---

to take possession and complete the Renovations), including any sums expended in excess of the principal amount of the Indebtedness;

      **2.1.3**    The obligation to remove all liens and other encumbrances against the Collateral that have not been approved by Lender in writing subject to Borrower's right to contest the same in accordance with the terms of the Loan Documents;

      **2.1.4**    The obligation to pay the premiums for all policies of insurance required to be furnished by Borrower pursuant to the Loan Documents during the Renovations, if such premiums are not paid by Borrower, except to the extent amounts sufficient to pay such premiums have been escrowed with Lender. Lender is obligated to apply such amounts deposited with Lender to pay such insurance premiums under the Loan Documents and Lender has failed to do so;

      **2.2**    All of Borrower's obligations under Article 14 of the Loan Agreement with respect to casualties and condemnation; and

      **3.**    **Representations and Warranties.**

      **3.1**    Guarantor makes the following representations and warranties to Lender as of the date hereof, and acknowledges that, but for the truth and accuracy of the following representations and warranties, Lender would not have agreed to execute the Amendment to Loan Documents:

      **3.1.1**    Reserved

      **3.1.2**    Guarantor resides at its address for receipt of notices identified in Section 19.

      **3.1.3**    Any and all balance sheets, net worth statements, and other financial data of Guarantor provided to Lender by or on behalf of Guarantor fairly and accurately present the financial condition of Guarantor as of the respective dates thereof.

      **3.1.4**    The execution, delivery, and performance by Guarantor of this Guaranty do not and will not contravene or conflict with (i) any Laws, (ii) any writ, injunction, or decree of any Governmental Authority, or court having jurisdiction over Guarantor, (iii) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty, (iv) the instruments creating any trust holding title to any assets included in Guarantor's financial statements, or (v) Guarantor's organizational documents or other documents governing Guarantor.

      **3.1.5**    Guarantor has full power and authority to execute, deliver, and perform its obligations under this Guaranty and all other Loan Documents to which Guarantor is a party, and such execution, delivery, and performance have been duly authorized by all requisite action on the part of Guarantor.

      **3.1.6**    This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms.

      **3.1.7**    Except as disclosed in writing to Lender, there is no action, proceeding, or investigation pending or, to Guarantor's knowledge, threatened or affecting Guarantor, that may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty. There are no judgments, or orders for the payment of money rendered against Guarantor for an aggregate amount in excess of Two

Hundred Fifty Thousand Dollars ($250,000), that have been undischarged for a period of ten (10) or more consecutive days and the enforcement of which is not stayed by reason of a pending appeal or otherwise.

       **3.1.8**    No default exists under any agreement to which Guarantor is a party that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty.

       **3.1.9**    Guarantor is fully aware of the financial condition of Borrower and is signing and delivering this Guaranty based solely upon Guarantor's own independent investigation of all matters regarding Borrower, the Loan, and the Project, and Guarantor is not relying in any manner upon any representation or statement made by Lender or Lender's Affiliates.

       **3.1.10**    All statements set forth in the Recitals are true and correct.

       **3.2**    All of the foregoing representations and warranties shall be deemed remade on the date of each advance of proceeds of the Loan and upon any extension of the Loan pursuant to the Loan Agreement.

       **3.3**    Guarantor hereby agrees to hold harmless, indemnify, and defend Lender from and against all losses, damages, costs, expenses, injuries, and liabilities, including Legal Expenses, that Lender may suffer or incur by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade.

     **4.**    **Performance by Guarantor.**

       **4.1**    Upon the occurrence and during the continuance of an Event of Default under the Loan Documents, Guarantor agrees to pay or perform the Guaranteed Obligations, as applicable, immediately on demand by Lender, regardless of any defense, right of setoff, or claims Borrower or Guarantor may have against Lender.

       **4.2**    Lender shall have the right, at its option, either before, during, or after commencing judicial or nonjudicial foreclosure proceedings, and before, during, or after pursuing any other right or remedy against Borrower or Guarantor, to perform any and all of the Guaranteed Obligations by or through any agent, receiver, contractor, or subcontractor of its selection, all as Lender in its sole discretion deems proper, but Lender shall have no obligation to do so.

       **4.3**    Guarantor shall hold harmless, indemnify, and defend Lender from and against any and all losses, damages, costs, expenses, injuries, and liabilities Lender may suffer or incur in connection with the exercise of its rights under this Guaranty or the performance of the Guaranteed Obligations, including Legal Expenses.

       **4.4**    During the course of any Renovations undertaken by Lender, or any other party on behalf of Lender, Guarantor shall pay, on demand, any amounts due to contractors, subcontractors, laborers, materialmen (provided that Guarantor shall have the right to contest any such amounts pursuant to the requirements set forth in the Loan Documents), and suppliers and for permits and licenses necessary or desirable in connection therewith. Guarantor's obligations in connection with such work shall not be affected by any errors or omissions of the Lender's Consultant, or any subcontractor, agent, or employee of any of the foregoing, or any other person or entity in the design, supervision, or performance of the Renovations. Guarantor assumes the risk of any and all such errors and omissions. Neither the completion of the Renovations by Lender, or any other party on Lender's behalf, nor the failure of any party to complete the Renovations, will relieve Guarantor of its liabilities hereunder. Guarantor's liability hereunder shall be

continuing and may be enforced by Lender to ensure timely and lien-free completion of Renovations, without loss, cost, expense, injury, or liability of any kind to Lender.

**5.    Remedies.** All of the remedies set forth herein, in any of the Loan Documents, at law, or in equity shall be equally available to Lender, and the choice by Lender of one such alternative over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Lender to recover amounts due Lender or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy.  The parties have agreed to the alternative remedies provided herein in part because they recognize that the choice of remedies following the occurrence of an Event of Default will necessarily be and should properly be a matter of good faith business judgment, which the passage of time and events may or may not prove to have been the best choice to maximize recovery by Lender at the lowest cost to Borrower or Guarantor.  It is the intention of the parties that such good faith choice by Lender be given conclusive effect regardless of such subsequent developments.

**6.    Waivers.** Guarantor unconditionally waives the following: (a) notice of acceptance of this Guaranty by Lender; (b) all notices and demands of every kind that may be required to be given by applicable Law; (c) prior to repayment in full of the Indebtedness, any defense, right of setoff or other claim that Guarantor may have against Borrower; (d) any defense, right of setoff or other claim Guarantor or Borrower may have against Lender; except for the defense of payment and performance in full; (e) any and all rights Guarantor may have under any anti-deficiency statute or other similar protections, and Guarantor agrees that Lender may pursue a deficiency judgment against Guarantor following foreclosure or acceptance of a deed in lieu of foreclosure; (f) presentment for payment, demand for payment, notice of nonpayment or dishonor, notice of non-performance, protest and notice of protest, diligence in collection, diligence in protection or realization upon the Collateral, and any and all formalities that otherwise might be legally required to charge Guarantor with liability; (g) any failure by Lender to inform Guarantor of any facts Lender may now or hereafter know about Borrower, the Project, the Loan, or the transactions contemplated by the Loan Agreement; (h) any requirement that Lender act with diligence in enforcing its rights under the Loan Documents or this Guaranty; (i) any right to require Lender to proceed against or exhaust its recourse against Borrower, any Other Guarantor, any other person or entity, or any security or Collateral, or to pursue any other remedy in its power, before being entitled to payment from Guarantor under this Guaranty or before proceeding against Guarantor; (j) any defense based upon election of remedies by Lender that destroys or otherwise impairs the subrogation rights of Guarantor or Guarantor's right (after payment of the Indebtedness) to proceed against Borrower or any other person or entity for reimbursement; (k) any defense of the statute of limitations in any action against Guarantor under this Guaranty; (l) any defense based upon the addition, substitution or release, in whole or in part, of any person or entity primarily or secondarily liable for or in respect of the Indebtedness or Guaranteed Obligations; and (m) any and all rights to require marshalling of assets by Lender.

**7.    Condition of Borrower**.  Credit may be granted or continued from time to time by Lender to Borrower without notice to or authorization from Guarantor, regardless of the financial or other condition of Borrower at the time of any such grant or continuation.  Lender shall have no duty to disclose or discuss any information to Guarantor about Borrower, the Project, or the Loan.  Guarantor is fully responsible for being and remaining informed by Borrower of all circumstances bearing on the risk of nonperformance of Borrower's obligations.  By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of this type, which risks Guarantor acknowledges and understands.

**8.    No Impairment of Guarantor's Liability.**

8.1     Guarantor's liability hereunder shall not be impaired, released, discharged, or otherwise affected by (a) any renewals or extensions of the Loan, with or without Guarantor's knowledge or consent; (b) any forbearance or delay in collecting interest or principal under the Note; (c) any waiver by Lender under any of the Loan Documents; (d) Lender's failure or election not to pursue any other remedies it may have against Borrower, any Guarantor, or any Other Guarantor; (e) any change or modification to any of the Loan Documents, including, without limitation, any increase in the Loan amount or applicable interest rate; (f) the acceptance by Lender of any additional Collateral, or any increase, substitution, or change therein; (g) the release by Lender of any Collateral, or any withdrawal thereof or decrease therein; (h) the incapacity, lack of authority or disability of any Guarantor or any Other Guarantor or the failure of Lender to file or enforce a claim against the estate of any Guarantor or any Other Guarantor; (i) the failure of any Other Guarantor to execute its guaranty, or by reason of the fact that any of the Collateral may be in default at the time of acceptance thereby by Lender or later, or by reason of the fact that a valid lien in any of the Collateral may not be conveyed to or created in favor of Lender; (j) the fact that the Collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; (k) the fact that any of the Indebtedness or the Guaranteed Obligations may be invalid for any reason whatsoever; (l) the fact that the value of any of the Collateral may not have been correctly estimated or may have changed or may hereafter change for any reason, including, without limitation, deterioration, waste, fire, theft, market conditions, or otherwise; (m) the fact that the financial condition of Borrower, any Guarantor, or any Other Guarantor, or any obligor of any of the Guaranteed Obligations or Indebtedness may not have been correctly estimated or may have changed or may hereafter change; or (n) the application of payments received from any source to the payment of any obligation other than amounts due under the Loan Documents even though Lender might lawfully have elected to apply such payments to any part or all of the Indebtedness.

8.2     Guarantor shall remain liable for payment and performance of the Guaranteed Obligations until the Indebtedness has been paid in full, notwithstanding anything that might otherwise operate as a legal or equitable discharge of a surety.

8.3     Guarantor understands and agrees that Lender may at any time enter into agreements with Borrower to amend and modify the Loan Documents, and may waive or release any provision of the Loan Documents, and may make and enter into any agreement as Lender and Borrower may deem proper and desirable with respect to the Loan Documents, without in any manner impairing or affecting this Guaranty or any of Lender's rights or Guarantor's obligations hereunder.

9.     **Guarantor's Obligations Are Absolute.**  This is an absolute, present, and continuing guaranty of performance and completion and not of collection.  This Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any Collateral through foreclosure or sale proceedings, as the case may be, under the Security Instrument or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower or any Other Guarantor in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right.  Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all rights and remedies available to Lender at law or in equity or under any of the Loan Documents.  Lender's exercise of any of its rights or remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent, and unconditional under any and all circumstances whatsoever. None of Guarantor's obligations under this Guaranty nor any of Lender's rights or remedies shall be impaired, modified, changed, or released in any manner whatsoever by any impairment, modification, change, release, or limitation of Borrower's liability under any of the Loan Documents or by reason of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower, any Guarantor, or any Other Guarantor.

**10.    Guaranteed Obligations Not Affected by Insolvency.**  This Guaranty shall continue to be effective or shall be reinstated (as the case may be) if any full or partial payment of the Indebtedness is rescinded, invalidated, declared fraudulent, set aside, determined void or voidable as a preference, fraudulent conveyance, impermissible setoff, or diversion of trust funds, or is otherwise required to be returned by Lender in connection with the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower, any Guarantor, or any Other Guarantor, or upon or as a result of the appointment of a receiver, intervenor, custodian or conservator of or trustee or similar officer for, Borrower, any Guarantor, or any Other Guarantor or any substantial part of its property, or otherwise, all as though such payment to Lender had not been made, regardless of whether Lender contested the order requiring the return of such payment. In addition, Guarantor shall pay or reimburse Lender for all expenses (including all Legal Expenses) incurred by Lender in the defense of any claim that a payment received by Lender in respect of all or any part of the Guaranteed Obligations must be refunded. The provisions of this Section shall survive the termination of this Guaranty and any satisfaction and discharge of Borrower by virtue of any payment, court order, or any applicable Laws.

**11.    Application of Payment.**  Lender may apply any amounts received on account of the Loan from any source to the Indebtedness or any other obligations of Borrower to Lender in such order as Lender may elect in its discretion. Any amounts received by Lender from Guarantor shall not reduce Guarantor's personal liability hereunder absent Lender's prior written consent, but shall instead be applied to the Indebtedness. Lender may reject and return any payment tendered by Guarantor prior to an Event of Default without Lender's prior written consent.

**12.    Assignment.**  Lender may, without notice to Guarantor, assign, participate, syndicate, or transfer the Loan, in whole or in part. In such event, each assignee, transferee, or holder of all or any part of the Loan may enforce this Guaranty, but Lender shall have an unimpaired right to enforce this Guaranty for its benefit as to any portion of the Loan that Lender retains. If Lender pledges or assigns the Note to any creditor as security for an obligation of Lender, such creditor may enforce this Guaranty to the same extent as would have been enforceable by Lender but for such pledge or assignment; *provided, however,* that unless Lender otherwise consents in writing, Lender shall have an unimpaired right, prior and superior to that of its creditor, to enforce this Guaranty for Lender's benefit to the extent any portion of the Indebtedness or any interest therein is not pledged or assigned.

**13.    Enforcement Costs.**  In addition to all other amounts due Lender hereunder, Guarantor shall pay Enforcement Costs to Lender, upon demand, if any of the following occurs: (a) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (b) an attorney is retained to represent Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (c) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (d) an attorney is retained to represent Lender in any proceedings whatsoever in connection with this Guaranty and Lender prevails in any such proceedings.

**14.    Indemnification and Defense Obligations.**  If a claim arises for which Guarantor has a duty to defend Lender under this Guaranty or any of the other Loan Documents to which Guarantor is a party, Lender shall have the right to choose its own legal counsel (at Guarantor's expense) and make all decisions relating to its defense, including, without limitation, the litigation strategy and the terms of any settlement.

**15.    Severability.**  Each provision in this Guaranty is intended to comply with all applicable Laws. However, if a court of competent jurisdiction holds that any provision of this Guaranty, or any portion thereof, is illegal, invalid, unlawful, void, or otherwise unenforceable as written, (i) such provision, or portion thereof, shall be given force and effect to the fullest possible extent permitted under applicable

Laws, (ii) this Guaranty shall be construed as if the illegal, invalid, unlawful, void, or otherwise unenforceable provision or portion thereof was not contained herein, and (iii) the rights, obligations, and interests of Guarantor and Lender shall continue in full force and effect to the fullest extent permitted under applicable Laws.

**16.     Jurisdiction and Venue.  WITH RESPECT TO ANY SUIT, ACTION, OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A "*PROCEEDING*"), GUARANTOR IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF NEW YORK AND STATE OF NEW YORK, (B) WAIVES ANY OBJECTION IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, (C) WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (D) WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION.**

**17.     Subordination.**

**17.1**     Any indebtedness of Borrower to Guarantor now or hereafter existing (the "*Subordinate Debt*") is hereby subordinated to Guarantor's obligations hereunder.  Guarantor agrees that, until the entire Indebtedness has been paid in full, Guarantor will not (a) seek, accept, or retain for its own account, any payment from Borrower on account of the Subordinate Debt, (b) declare due or accelerate the maturity of any Subordinate Debt, (c) take any actions to enforce or collect any Subordinate Debt or any part thereof or realize upon any collateral securing Subordinate Debt, or (d) act as a petitioning creditor in any bankruptcy, reorganization, insolvency, receivership, or dissolution proceeding involving Borrower (a "*Bankruptcy Proceeding*").

**17.2**     Any payments to Guarantor on account of the Subordinate Debt shall be collected and received by Guarantor in trust for Lender and shall be paid over to Lender for application to the Indebtedness in such order as Lender may elect without impairing or releasing the obligations of Guarantor hereunder, including, without limitation, any payment, dividend, or distribution received by Guarantor in any Bankruptcy Proceeding,

**17.3**     Guarantor hereby irrevocably nominates, constitutes and appoints Lender as Guarantor's true and lawful attorney-in-fact with full power of substitution and authority to appear on Guarantor's behalf and its place and stead in any Bankruptcy Proceeding for the purpose of filing proof of Guarantor's claim for any Subordinate Debt owed to Guarantor, or any part thereof, to vote the claims of the indebtedness constituting such Subordinate Debt, and prosecuting such claim and collecting any creditors' dividend or other payment made in respect of such Subordinate Debt.  Guarantor agrees to cooperate with any and all requests by Lender in connection with any such Bankruptcy Proceedings and to do such other acts and things and deliver, or cause to be delivered, such other documents as Lender may reasonably request to effect the intent and purpose of this Section 17.

**18.     Jury Trial Waiver.  GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR RELATING THERETO OR ARISING FROM THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS GUARANTY AND AGREE THAT ANY**

**SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

      **19.    Notice.**  Any notice, demand, request, or other communication that any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three Business Days after mailing; (c) if by Federal Express or other nationally recognized overnight courier service, on the next Business Day after delivered to such courier service for delivery on the next Business Day; or (d) if by e-mail transmission, on the day of transmission so long as a copy is sent on the same day by Federal Express or other nationally recognized overnight courier, to the addresses set forth below, or at such other address as the party to be served with notice has furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice:

      If to Guarantor:

           Fredrick Schulman
           7001 Martin Drive
           New Orleans, LA  70126
           Attention: N/A

           Moshe Silber
           25 Hidden Valley Drive
           Suffern, NY 10901
           Attention: N/A

      If to Lender:

           KeyBank National Association
           66 South Pearl Street 7th floor
           Mail Code NY-31-66-0767
           Albany, NY 12207
           Attn:  Real Estate Capital Servicing
           Reference: Lakewood Pointe Apts LLC & Loan No. 10219224

      **20.    Financial Statements.**  Guarantor shall deliver or cause to be delivered to Lender all of the Guarantor financial statements to be delivered in accordance with the terms of the Loan Agreement, if any.

      **21.    Successors and Assigns.**  This Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of Guarantor and shall not be discharged in whole or in part by the death, incapacity, or dissolution of Guarantor or of any principal of Guarantor.

      **22.    Joint and Several Liability.**  The liability of each Guarantor and any Other Guarantors shall be joint and several. If any Guarantor is an individual and resides in a community property state, then, unless such Guarantor's obligations hereunder are otherwise limited by a specific annotation either on the first page of this Guaranty or following Guarantor's signature below, any married person or registered domestic partner who signs this Guaranty warrants that it is an obligation incurred on behalf of his or her marital community/domestic partnership and agrees that this Guaranty shall bind the marital community/domestic partnership. Lender may join each Guarantor in any suit in connection with the Loan Documents or proceed against any Guarantor in a separate action.

     **23.**   **Further Assurances.** Guarantor agrees at any time upon Lender's request to take, or cause to be taken, any action and to execute and deliver any additional documents that, in Lender's reasonable opinion, may be necessary to assure to Lender the full benefits of this Guaranty.

     **24.**   **Governing Law.**  **THIS GUARANTY, THE NOTE, AND ALL OTHER INSTRUMENTS EVIDENCING AND SECURING THE LOAN WERE NEGOTIATED IN THE STATE OF NEW YORK, AND DELIVERED BY GUARANTOR OR BORROWER, AS APPLICABLE, AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND THE UNDERLYING TRANSACTIONS EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, INTERPRETATION AND PERFORMANCE OF THIS GUARANTY AND THE GUARANTEED OBLIGATIONS ARISING HEREUNDER, THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. [NOTE TO PREPARER: Keep consistent with Loan Agreement]**

     **25.**   **Disposition of Loan Proceeds.** Lender shall be entitled to honor any request for proceeds of the Loan made by Borrower and shall have no obligation to see to the proper disposition of such disbursements. Guarantor agrees that Guarantor's obligations hereunder shall not be released or affected by reason of any improper disposition by Borrower of such disbursements.

     **26.**   **No Modification or Waiver.** No modification or waiver of any of the provisions of this Guaranty shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered by Lender.

     **27.**   **Counterparts.** This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

     **28.**   **Electronic Signatures.** The electronic signature of a party to this Guaranty shall be as valid as an original signature of such party and shall be effective to bind such party to this Guaranty. The parties agree that any electronically signed document (including this Guaranty) shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files. Such paper copies or "printouts," if introduced as evidence in any proceeding, will be admissible as between the parties to the same extent and under the same conditions as other original business records created and maintained in documentary form. Neither Guarantor nor Lender shall contest the admissibility of true and accurate copies of electronically signed documents on the basis of the best evidence rule or as not satisfying the business records exception to the hearsay rule. For purposes hereof, "electronic signature" means a manually signed original signature that is then transmitted via the internet as a "pdf" (portable document format) or other replicating image attached to an e-mail message, and "electronically signed document" means a document transmitted via e-mail containing an electronic signature.

     **29.**   **Credit Verification.** Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, general partner of a Guarantor or in any other capacity, hereby authorizes Lender, its employees, agents, successors, assigns and Affiliates, to (i) obtain credit reports from credit reporting agencies of Lender's choice and check credit references until repayment in full of the Loan, (ii) obtain other information regarding Guarantor's deposit accounts, income, credit, employment, and business relationships in connection with any monitoring, collection, or future transaction concerning the Guaranteed

Obligations, including any modification, extension, restatement or renewal of the Guaranteed Obligations, and (iii) verify such reports and information.

**30.    Other Definitional Provisions.** The words "hereof," "herein," and "hereunder," and words of similar import when used in this Guaranty shall refer to this Guaranty. The word "or" has the inclusive meaning represented by the phrase "and/or". All references to "Sections" shall mean the Sections of this Guaranty unless otherwise stated.

**31.    State-Specific Provisions.** The following state-specific terms and conditions shall control over any inconsistent provisions of this Guaranty:

**31.1    Guarantor Waivers.** Guarantor hereby waives:

**31.1.1**  the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or guarantor);

**31.1.2**  the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors;

**31.1.3**  diligence in collecting the Indebtedness, presentment, demand for payment, protest and all notices with respect to the Loan Documents and this Guaranty which may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of acceptance, notice of any amendment of the Loan Documents, notice of the occurrence of any Event of Default, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest and notice of the incurring by Borrower of any obligation or indebtedness; and

**31.1.4**  all rights to require Lender to:

**31.1.4.1**  proceed against or exhaust any collateral held by Lender to secure the repayment of the indebtedness.

**31.1.4.2**  proceed against or pursue any remedy it may now or hereafter have against Borrower or any guarantor, or, if Borrower or any guarantor is a partnership, any general partner of Borrower or general partner of any guarantor; or

**31.1.4.3**  demand or require collateral security from Borrower, any other guarantor or any other Person as provided by applicable law or otherwise.

**[Remainder of page intentionally left blank; signature(s) appear on the following page].**

Executed as of the date of this Guaranty.

**GUARANTOR:**

By: _____

Name: Fredrick Schulman

**KeyBank** 🔑

**GUARANTOR:**

By: _____

Name:  Moshe Silber

---

**Keycorp Confidential**

*140235294.6*



EXHIBIT

9

February 9, 2024

**VIA FEDEX AND ELECTRONIC MAIL**

Moshe Silber                                    Fredrich Schulman
25 Hidden Valley Drive                          7001 Martin Drive
Suffern, NY 10901                               New Orleans, Louisiana 70126
Email address                                   Email address

## NOTICE OF DEFAULT AND DEMAND FOR PAYMENT

Re: Interim Loan Agreement, dated as of July 28, 2021 (as the same has been and may be from time to time amended, restated, or otherwise modified in accordance with its terms, the "Loan Agreement"), between Lakewood Pointe Apts LLC, as borrower (the "Borrower"), and KeyBank National Association, as lender (the "Lender"); Limited Recourse Guaranty, dated as of July 28, 2021 (as the same has been and may be from time to time amended, restated, or otherwise modified in accordance with its terms, the "Guaranty"), executed by Fredrick Schulman and Moshe Silber (individually and collectively, the "Guarantor"), to and for the benefit of Lender.

Dear Messrs. Schulman and Silber:

Reference is made to the outstanding Loan to the Borrower under the Loan Agreement and the related Loan Documents.

Reference is further made to the Loan Agreement, Guaranty, that certain Promissory Note, dated as of July 28, 2021, in the principal amount of $22,400,000.00 (the "Loan"), issued by Borrower in favor of Lender (as the same has been and may be from time to time amended, restated or otherwise modified in accordance with its terms, the "Note"), and related agreements, instruments, and documents (collectively, as each may be amended, restated or otherwise modified in accordance with its terms, the "Loan Documents").

By letter dated February 9th, 2024, we provided the Borrower and you with formal with notice of the occurrence of certain Events of Default under the Loan Agreement (collectively, the "Specified Loan Defaults"), Lender's imposition of the Default Rate, and Lender's demand for payment (the "Borrower Demand Letter"). As detailed in the Borrower Demand Letter, the total indebtedness due as of February 9, 2024 under the Loan is $22,630,695.03 comprised of $22,100,700.00 in outstanding principal, $193,995.03 of accrued and unpaid interest, $336,000.00 in fees and charges, plus Enforcement Costs.

Further reference is hereby made to Section 2 of the Guaranty, which provides that, "Guarantor absolutely, unconditionally, and irrevocably guarantees . . . the full and prompt payment of all amounts payable by Borrower under the Loan Documents. Sections 1.6 and 3 of the Guaranty further provide that Lender has the right to pursue against Guarantor "an amount equal to "(i) Twenty-Five percent (25%) of the principal amount of the Indebtedness (whether outstanding or undisbursed) as of the occurrence of the Event of Default forming the basis for a demand by Lender hereunder, *plus* (ii) all amounts in excess of the maximum principal amount of the Note advanced to cure any Default or Event of Default or to protect the value or priority of Lender's security for the Loan, *plus* (iii) all interest due Lender under the Loan Documents at the Applicable Rate(s) or Default Rate, as applicable, *plus* (iv) all Enforcement Costs[,]" (such sum, the "Guaranteed Obligation").

Lender hereby provides notice that Guarantor is personally liable to Lender for the Guaranteed Obligation and accordingly, demands payment in full by Guarantor in the amount of $22,630,695.03. To obtain

Lakewood Pointe Apts LLC
Guaranty
February __, 2024

remittance instructions and the up-to-date amount of the Guaranteed Obligation, please contact me at 610-832-1840 or alberto_sanchez@keybank.com.

Notwithstanding anything to the contrary contained in this letter, and irrespective of the Lender's receipt and acceptance of any payment by or on behalf of the Guarantor or Borrower on account of the Indebtedness or the Guaranteed Obligation, the Lender specifically does not waive, and does not agree to forbear, with respect to any one or more of its rights and remedies under the Loan Agreement, Note, Guaranty, Loan Documents or applicable law and reserves all of its rights under the Loan Agreement, Note, Guaranty, Loan Documents and applicable law with respect to the Specified Loan Defaults and any other default or Event of Default which may have occurred, or the occurrence of any events which with the passage of time or the giving of notice, or both, would constitute a default or Event of Default under the Loan Agreement, the Note or any other Loan Document. Nothing contained herein shall establish any course of dealing among the Lender and the Guarantor that is inconsistent with the express terms of the Loan Agreement, Note, Guaranty or the provisions of any of the Loan Documents.

All existing obligations of the Borrower and Guarantor under the Loan Agreement, Guaranty, and other Loan Documents shall remain in full force and effect.

Very truly yours,

KEYBANK NATIONAL ASSOCIATION

By: _Alberto Sanchez_

Alberto Sanchez

Vice President, Asset Recovery Group

Cc:    Curtis L. Tuggle, Esq., Thompson Hine LLP (curtis.tuggle@thompsonhine.com)

Lakewood Pointe Apts LLC
7001 Martin Drive
New Orleans, Louisiana 70126
Attn: Frederick Schulman

2

February 9, 2024

**VIA FEDEX AND ELECTRONIC MAIL**

Lakewood Pointe Apts LLC
7001 Martin Drive
New Orleans, Louisiana 70126
Attn: Frederick Schulman

**NOTICE OF DEFAULT AND IMPOSITION OF DEFAULT RATE OF INTEREST;
DEMAND FOR PAYMENT**

Re: Interim Loan Agreement, dated as of July 28, 2021 (as the same has been and may be from time to time amended, restated, or otherwise modified in accordance with its terms, the "Loan Agreement"), between Lakewood Pointe Apts LLC, as borrower (the "Borrower"), and KeyBank National Association, as lender (the "Lender"); Limited Recourse Guaranty, dated as of July 28, 2021 (as the same has been and may be from time to time amended, restated, or otherwise modified in accordance with its terms, the "Guaranty"), by Fredrick Schulman and Moshe Silber (individually and collectively, the "Guarantor"), to and for the benefit of Lender.

Dear Messrs. Schulman and Silber:

Reference is hereby made to the Loan Agreement, Guaranty, that certain Promissory Note, dated as of July 28, 2021, in the principal amount of $22,400,000.00 (the "Loan"), issued by Borrower in favor of Lender (as the same has been and may be from time to time amended, restated or otherwise modified in accordance with its terms, the "Note"), and related agreements, instruments, and documents (collectively, as each may be amended, restated or otherwise modified in accordance with its terms, the "Loan Documents"). Capitalized terms used herein but not defined herein shall have the meanings given to them in the Loan Agreement.

Section 17.1.6 that provides that an Event of Default shall occur if "Borrower or any Guarantor fails, at any time, to comply with any of the financial or performance-related covenants or financial reporting requirements set forth on EXHIBIT G." Borrower advised the Lender that the Project failed to achieve a Debt Yield Ratio of 8.9% for the period ended October 31, 2023 based on a then current Rent Roll and trailing twelve (12) months Operating Expenses for the Project. Additionally, Borrower has not supplied Lender with proof that the property repair covenants set forth in EXHIBIT G have been completed. Further, pursuant to Section 12.14 (Financial Reporting), "Borrower and Guarantor shall provide such additional financial information as Lender may reasonably require…" On January 18, 2024, the Lender requested in writing specific financial information from the Borrower and Guarantor in accordance with its rights under the Loan Agreement. Borrower and the Guarantor have failed to provide all of the reasonably required information requested by the Lender. These failures to comply with Sections 12.14 and 12.15 of the Loan Agreement constitute additional Events of Default under the Loan Agreement and other Loan Documents (collectively, the "Additional Specified Defaults").

Further reference is made to Article 17 (Events of Default) of the Loan Agreement, which provides, among other things, that an Event of Default shall occur if the Borrower fails to pay all remaining principal, accrued unpaid interest, and any other amounts outstanding under the Loan Documents in full on the applicable Maturity Date. The Loan matured on December 31, 2023. As such, an Event of Default has occurred and is continuing under the Loan Agreement and the Loan Documents (the "Specified Payment Default"). The Specified Payment Default is continuing and has not been waived by the Lender or cured by or on behalf

Lakewood Pointe Apts LLC
February 9, 2024

of the Borrower. Moreover, the foregoing identification of the Specified Payment Default does not imply that other Events of Default under the Loan Agreement or the other Loan Documents have not occurred.

Without waiving any of its rights or remedies under the Loan Agreement, other Loan Documents, and applicable law, the Lender hereby accelerates the Loan and all Indebtedness under the Loan Agreement and other Loan Documents on account of the Specified Payment Default and demands immediate repayment in full of the Indebtedness (as defined herein). In addition, the Lender is hereby imposing the Default Rate on the outstanding Indebtedness under the Loan Agreement and other Loan Documents effective as of the date of this letter.

The total indebtedness due as of February 9, 2024 under the Loan is $22,630,695.03, determined as follows:

| Principal | $22,100,700.00 |
| Accrued Interest | $193,995.03 |
| Charges and fees | $336,000.00 |

To obtain remittance instructions and up-to-date payoff amount, please contact me at 610-832-1840 or alberto_sanchez@keybank.com. Be advised that Lender may include actual or estimated legal fees and expenses arising from Borrower's default as contemplated by the Loan Documents in its determination of the balance due (such balance, the "Indebtedness").

Notwithstanding anything to the contrary contained in this letter, and irrespective of the Lender's receipt and acceptance of any payment by or on behalf of the Borrower on account of the outstanding Indebtedness, the Lender specifically does not waive, and does not agree to forbear, with respect to any one or more of its rights and remedies under the Loan Agreement, the Note, the other Loan Documents or applicable law and reserves all of its rights under the Loan Agreement, the Note, the other Loan Documents and applicable law with respect to the Specified Payment Default and the Additional Specified Defaults and any other Default or Event of Default which may have occurred, or the occurrence of any events which with the passage of time or the giving of notice, or both, would constitute a default or Event of Default under the Loan Agreement, the Note or any other Loan Document. Nothing contained herein shall establish any course of dealing among the Lender and the Borrower that is inconsistent with the express terms of the Loan Agreement, the Note, or the provisions of any of the Loan Documents.

On behalf of Lender, the undersigned demands the immediate repayment, in full, of the Indebtedness.

Very truly yours,


KEYBANK NATIONAL ASSOCIATION


By: _Alberto Sanchez_

Alberto Sanchez

Vice President, Asset Recovery Group


Cc:    Curtis L. Tuggle, Esq., Thompson Hine LLP (curtis.tuggle@thompsonhine.com)

2

Lakewood Pointe Apts LLC
February 9, 2024

Moshe Silber                              Fredrich Schulman
25 Hidden Valley Drive                    7001 Martin Drive
Suffern, NY 10901                         New Orleans, Louisiana 70126