UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION, | CIVIL ACTION NO. 24-850 |
| Plaintiff, | SECTION M(5) |
| vs. | JUDGE BARRY W. ASHE |
| LAKEWOOD POINTE APTS LLC, FREDRICK SCHULMAN AND MOSHE SILBER, | MAGISTRATE JUDGE MICHAEL B. NORTH |
| Defendants. | |

## FIRST AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes KEYBANK NATIONAL ASSOCIATION ("**KeyBank**," "**Lender**," or "**Plaintiff**"), who respectfully represents as follows:

### I.   PARTIES

1. Plaintiff, KeyBank, is a national banking association whose main office is located in Cleveland, Ohio, as set forth in its Amended and Restated Articles of Association. "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. The United States Supreme Court has held "that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). As such, KeyBank is a citizen of the State of Ohio.

2. Defendant, Fredrick Schulman, is an individual of the full age of majority and a citizen of the State of New York.

3. Defendant, Moshe "Mark" Silber, is an individual of the full age of majority and a citizen of the State of New York.

#102443327v1

4.  Defendant, Lakewood Pointe Apts LLC ("**Lakewood**" or "**Mortgagor**"), is a limited liability company comprised of two members: (a) NBA New Orleans Holdings LLC ("**NBA**"); and (b) Defendant, Moshe "Mark" Silber. NBA, in turn, is a limited liability company comprised of two members: (a) Defendant, Fredrick Schulman; and (b) Defendant, Moshe "Mark" Silber. NBA, therefore, is a citizen of the State of New York. Lakewood, likewise, is a citizen of the State of New York.

## II.   JURISDICTION AND VENUE

5.  This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and complete diversity exists between the Plaintiff—a citizen of the State of Ohio—and the Defendants—each of whom is a citizen of the State of New York.

6.  Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a) because this is the district in which a substantial part of the events or omissions giving rise to the claims occurred and in which a substantial part of the property that is the subject of the action is situated.

## III.   GENERAL ALLEGATIONS

**A.   The Interim Loan Agreement**

7.  KeyBank is the holder for value of that certain Interim Loan Agreement dated July 28, 2021 (the "**Interim Loan Agreement**") by and between KeyBank, as lender, and Lakewood, as borrower, as amended that by that certain Amendment to Loan Documents dated January 26, 2023 (the "**Loan Agreement Amendment**") by and between KeyBank, lender, Lakewood, as borrower, and Moshe "Mark" Silber and Fredrick Schulman, as guarantors (collectively, with the Interim Loan Agreement, the "**Loan Agreement**") and certain other loan documents from time to time executed and delivered to KeyBank in connection with the Loan (collectively, the "**Loan**

**Documents**"), pursuant to which KeyBank agreed to make, and Lakewood agreed to accept, the loan as more particularly described and subject to the terms and conditions set forth therein (the "**Loan**").

**B.     The Promissory Note**

8.     KeyBank is the owner and holder of that certain Promissory Note dated July 28, 2021 (the "**Note**") in the original principal amount of $22,400,000.00 executed by Lakewood in favor of, and payable to the order of, KeyBank, evidencing the Loan with interest thereon and payable as provided in the Note and in the Loan Agreement.

**C.     The Mortgage, Assignments and Security Agreement**

9.     The Loan, including, without limitation, the obligations of Lakewood to KeyBank evidenced by the Note, and the Secured Obligations, as defined below, are secured by, among other things, that certain Mortgage, Assignment of Leases and Rents, Assignment of Contracts and Security Agreement dated July 28, 2021 (the "**Mortgage**") executed by Lakewood in favor of KeyBank before a notary public and recorded September 21, 2021 at N. A. No. 2021-38637, MIN 1370575, official records of Orleans Parish, Louisiana.

10.     Lakewood executed the Mortgage through its Authorized Signatory, Fredrick Schulman, pursuant to a Certificate of Consent to Purchase Member Interests and Enter Loan attached to the Mortgage.

11.     The security interests granted in the Mortgage on the personal and movable property, including, without limitation, the assignment of contracts set forth in the Mortgage, were perfected by the filing of that certain UCC-1 Financing Statement on September 21, 2021 with the Clerk of Court of Orleans Parish, Louisiana and included in the Louisiana Secretary of State Master UCC Index as UCC Instrument No. 36-2021-38638 and that certain UCC-1 Financing Statement

filed on July 30, 2021 with the Delaware Department of State as UCC Filing No. 2021-6014188, which UCC-1 Financing Statements encumber all assets in relation to the Property, as defined below.

12. In the Mortgage, the Secured Obligations include, among other things, (i) all obligations due and owing under the Note, (ii) the payment and performance of all other obligations of Lakewood under the Mortgage and the Loan Documents, and (iii) the payment and performance of all other obligations that Lakewood may agree to pay and/or perform for the benefit of KeyBank pursuant to an obligation secured by the Mortgage and described therein (collectively, the "**Secured Obligations**").

13. In the Mortgage, in order to secure the full and prompt payment of the Secured Obligations, and the performance of the covenants and agreements of Mortgagor contained in the Loan Documents, including the Mortgage, Lakewood, as mortgagor, mortgaged, affected, pledged, hypothecated, collaterally assigned and granted a mortgage and/or security interest in, all of Lakewood's right, title and interest in the following described property (collectively, the "**Property**" or the "**Property, the Personal Property, the Leases and Rents and the Proceeds**"), including without limitation, the following:

> The real (immovable) property, improvements and personal (movable) property that bear, and are located at, the municipal address of 7001 Martin Drive, New Orleans, Louisiana 70126, which property particularly described in the Mortgage; and
>
> All products, profits, rents (together, the "**Rents**"), proceeds of, additions and accretions to, substitutions, and replacements for, and changes in any of the property described in the Mortgage.

14. In addition, section 2.3 of the Mortgage provides as follows:

> **2.3 Lender's Rights After Event of Default.** If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Property directly, by a keeper, or by any other manner or proceeding permitted by the laws of the Property jurisdiction, Lender shall immediately have all rights, powers and authority granted to Mortgagor under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Mortgagor authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Property to pay all Rents to, or as directed by, Lender, and Mortgagor shall, upon Mortgagor's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Mortgagor hereby irrevocably authorizes Lender to give, notice to all tenants of the Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Mortgagor any amounts that are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

In sum, under section 2.3, if an Event of Default has occurred and is continuing, KeyBank shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid, from the Property, and Lakewood authorizes KeyBank to collect, sue for and compromise Rents and directs each tenant of the Property to pay all rents to KeyBank.

15. Further, section 2.4 of the Mortgage provides as follows:

> **2.4 Lender's right to Enter Property After Event of Default.** If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Mortgagor, and even in the absence of waste, enter upon, take and maintain full control of the Property, and may exclude Mortgagor and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Property and the execution or termination of contracts providing for the management, operation or maintenance of the Property, for the purposes of enforcing this pledge of Rents, protecting the Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

In sum, under section 2.4, if an Event of Default has occurred and is continuing, KeyBank may enter upon, take and maintain full control of the Property, and may exclude Lakewood therefrom, in order to perform all acts that KeyBank, in its discretion, determines to be necessary or desirable

for the operation and maintenance of the Property, including the execution or termination of contracts providing for the management, operation or maintenance of the Property.

16. Further, section 2.5 of the Mortgage provides as follows:

> **2.5  Appointment of a Keeper.** Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Mortgagor's solvency, and without the necessity of giving prior notice (oral or written) to Mortgagor, Lender may apply to any court having jurisdiction for the appointment of a keeper for the Property to take any or all of the actions set forth herein. If Lender elects to seek the appointment of a keeper for the Property at any time after an Event of Default has occurred and is continuing, Mortgagor, by its execution of this Security Instrument, expressly consents to the appointment of such keeper, including the appointment of a keeper *ex parte*, if permitted by applicable law. Mortgagor consents to shortened time consideration of a motion to appoint a keeper. Lender or the keeper, as applicable, shall be entitled to receive a reasonable fee for managing the Property and such fee shall become an additional part of the Secured Obligations. Immediately upon appointment of a keeper or Lender's entry upon and taking possession and control of the Property, possession of the Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the keeper, as applicable. If Lender takes possession and control of the Property, Lender may exclude Mortgagor and its representatives from the Property.

In sum, under section 2.5, if an Event of Default has occurred and is continuing, KeyBank may apply to any court having jurisdiction for the appointment of a keeper for the Property, and Lakewood expressly consents to the appointment of a keeper, including the appointment of a keeper *ex parte,* if permitted by applicable law. Furthermore, La. R.S. 9:5136, *et seq.,* expressly permits the appointment of a keeper.

**D.     The Guaranties**

17. To guaranty the obligations of Lakewood to KeyBank in connection with the Loan, Fredrick Schulman and Moshe "Mark" Silber (together, "**Guarantors**") executed that certain Limited Recourse Guaranty dated July 28, 2021 in favor of KeyBank (the "**Limited Recourse Guaranty**"), pursuant to which the Guarantors are obligated absolutely, unconditionally and irrevocably, solidarily, jointly and severally, for the full and prompt payment of all amounts

payable under the Loan Documents, subject to certain recourse limitations which may apply except upon the occurrence of certain Springing Recourse Events, as defined and more fully set forth therein.

18. Guarantors also executed that certain Performance and Completion Guaranty dated as of January 26, 2023 in favor of KeyBank (the "**Completion Guaranty**;" the Completion Guaranty and the Limited Recourse Guaranty may be collectively referred to as the "**Guaranties**"), in which Guarantors agreed to make certain renovations, restoration and repairs to the Property, as more fully set forth therein.

19. Guarantors are both defendants in actions by the United States Department of Justice stylized as *USA v. SILBER*, Case No. 24-cr-00446 (D. NJ) and *USA v. SCHULMAN*, 24-mc-00083 (D. NJ), respectively. On April 17, 2024, Mr. Silber executed a Plea Agreement [24-cr-00446 ECF No. 6] as to one count of conspiracy to commit wire fraud affecting a financial institution, which was filed on July 9, 2024, along with a Waiver of Indictment [24-cr-00446, ECF No. 2] and consent to proceedings on the allegations contained in the Information [24-cr-00446, ECF No. 1]. The criminal proceedings seriously implicate the ability of Mr. Silber to competently manage the Property and preserve its value for the sake of Mortgagor's creditors. Accordingly, KeyBank respectfully submits the appointment of a keeper over the Property is appropriate and necessary.

E. **The Defaults**

20. Lakewood, and in turn, the Guarantors, are in default under the terms and conditions of the Loan Agreement, Note, Mortgage and Guaranties because Lakewood has failed to, among other things, pay all unpaid principal and accrued interest by the maturity date of the Loan, which matured on December 31, 2023 (the "**Maturity Date**"). In addition, Lakewood has

breached a number of financial and performance-related covenants, each of which constitute events of default under the Loan Agreement, including, but not limited to (i) the failure to achieve a Debt Yield Ratio, as defined in the Loan Agreement, of 8.9% for the period ending October 31, 2023; (ii) the failure to provide proof that certain repair covenants had been satisfied; and (iii) the failure to furnish reasonable financial information in response to KeyBank's written request on January 18, 2024.

21. As a result of the aforementioned defaults, by letter dated February 9, 2024, KeyBank demanded payment from Lakewood and the Guarantors of all amounts due under the Note, and, in turn, the Mortgage and the Guaranties.

22. Despite Lender's demand, to date, Lakewood and the Guarantors have failed to pay the amounts due under the Note, and, in turn, the Mortgage and the Guaranties.

23. Consequently, Lakewood is in default under the Loan Agreement, Note, and, in turn, the Mortgage, and the Guarantors are in default under the Guaranties.

**F.   Attorneys' Fees**

24. The Loan Agreement, Note, and Mortgage each provide that Lakewood agrees to pay the attorneys' fees and other expenses incurred by KeyBank in enforcing its rights under the Loan Agreement, Note, and the Mortgage.

25. In the Guaranties, the Guarantors agreed to reimburse KeyBank for any attorneys' fees, costs and expenses incurred by KeyBank in the enforcement by KeyBank of any of its rights under the Guaranties.

26. KeyBank has engaged counsel to (a) enforce KeyBank's rights under the Loan Agreement, Note, Mortgage, and Guaranties, and (b) institute these proceedings to collect the amounts due thereunder, and seek recognition of and enforce, the Mortgage, including the

assignment and pledge of leases and rents and the security interests thereunder. Accordingly, KeyBank is entitled to recover from Lakewood and the Guarantors the reasonable attorneys' fees, court costs and other expenses that it incurs in connection with its collection efforts, including the filing and prosecution of these proceedings.

### G. The Amounts Due

27. The amount due from, and unpaid by, Lakewood, and, in turn, the Guarantors, to KeyBank under the Note and Guaranties as of February 9, 2024, was as follows:

| | |
|---|---|
| Principal | $22,100,700.00 |
| Accrued Interest through February 9, 2024 | $193,995.03 |
| Charges and Other Fees | $336,000.00 |
| **Total** | **$22,630,695.03** |

Plus interest at the Note's default rate and late charges accruing after February 9, 2024, together with all costs, fees (including attorney's fees), expenses and charges that have accrued as of, and that continue to accrue after February 9, 2024, until all of the obligations of Lakewood and the Guarantors to KeyBank are paid in full.

### IV. SEQUESTRATION

28. Pursuant to Rule 64 of the Federal Rules of Civil Procedure, Lender may utilize all state law remedies providing for seizure of property, including, but not limited to, the remedy of sequestration found in Articles 3571 through 3576 of the Louisiana Code of Civil Procedure.

29. Because it is within the power of defendant to conceal, dispose of, or waste the Property, the Personal Property, the Leases and Rents and the Proceeds, KeyBank is entitled to, and respectfully requests that this Honorable Court issue, writs of sequestration directing the

seizure of the Property, the Personal Property, the Leases and Rents and the Proceeds, to protect KeyBank's mortgage, assignment and security interests therein.

## PRAYER

WHEREFORE, KeyBank National Association, prays for:

1. Judgment rendered in its favor and against Lakewood Pointe Apts LLC, Fredrick Schulman and Moshe "Mark" Silber, *in solido*, in the following amounts:

   a. Unpaid principal in the amount of $22,100,700.00, plus accrued interest, and other costs and charges in the amounts of $193,995.03, and $336,000.00, respectively;

   b. Plus interest at the Note's default rate and late charges accruing after February 9, 2024, together with all costs, fees (including attorney's fees), expenses and charges that have accrued as of, and that continue to accrue after, February 9, 2024, until all of the obligations of Lakewood Pointe Apts LLC and the Guarantors to KeyBank are paid in full.

2. Judgment rendered in its favor and against Lakewood Pointe Apts LLC, Fredrick Schulman and Moshe "Mark" Silber recognizing (a) the validity and enforceability of the Mortgage, the assignments, the pledge and the security interests created and evidenced by the Mortgage, the assignment and pledge of rents and the security interest, all in favor of KeyBank National Association in the Property and other collateral outlined in the Mortgage, (b) that KeyBank has a first priority, priming Mortgage on the Property, and (c) the rights and remedies of KeyBank National Association under the Mortgage;

3. Judgment rendered in its favor and against Lakewood Pointe Apts LLC for all Rents as they become due and payable, including Rents then due and unpaid, from the Property, and a direction that each tenant of the Property to pay all rents to KeyBank;

4. Judgment rendered in its favor and against Lakewood Pointe Apts LLC permitting KeyBank to enter upon, take and maintain full control of the Property, excluding Lakewood Pointe Apts LLC therefrom, in order to perform all acts that KeyBank, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Property, including the execution or termination of contracts providing for the management, operation or maintenance of the Property;

5. Judgment rendered in its favor and against Lakewood Pointe Apts LLC appointing a keeper for the Property; and

6. Writs of sequestration issue herein directing the Marshal to seize and attach, according to law, the Property, the Personal Property, the Leases and Rents and the Proceeds; and

After due proceeding had, there be judgment rendered herein in favor of KeyBank National Association and against Lakewood Pointe Apts LLC, Fredrick Silber and Moshe "Mark" Silber granting KeyBank National Association such other and further relief as is just and equitable.

    Respectfully submitted,

*/s/ Brandon K. Black*
Brandon K. Black (#24298)
Susan M. Tyler (#18034)
Samantha A. Oppenheim (#38364)
Lauren F. Morrison (#40775)
**JONES WALKER LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8641
Fax: (504) 589-8641
bblack@joneswalker.com
styler@joneswalker.com
soppenheim@joneswalker.com
lmorrison@joneswalker.com

-and-

Curtis L. Tuggle (Ohio Bar #0078263)
(admitted *pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5904
Curtis.Tuggle@thompsonhine.com

*Attorneys for KeyBank National Association*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion will be served on July 12, 2024 by email on counsel for the defendants and by mail to the addresses below:

| | | |
|---|---|---|
| Sheldon Gopstein<br>sg@gopsteinlaw.com | Mark S. Stein<br>mstein@lowestein.com | Gregory Marsiglia<br>gmarsiglia@lowestein.com |
| Lakewood Pointe Apts LLC<br>Through Registered Agent<br>VCORP Agent Services, Inc.<br>3867 Plaza Tower Dr. 1st Floor<br>Baton Rouge, LA  70816 | Moshe Silber<br>41 Powerder Horn Drive<br>Suffern, NY  10901-2426 | Fredrick Schulman<br>75 E.Long Hill Road<br>Briarcliff Manor, NY 10510 |

/s/ *Brandon K. Black*
Brandon K. Black