EXHIBIT 3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEYBANK NATIONAL ASSOCIATION,** | **CIVIL ACTION NO. 24-850** |
| **Plaintiff,** | **SECTION M(5)** |
| **vs.** | **JUDGE ASHE** |
| **LAKEWOOD POINTE APTS LLC, FREDRICK SCHULMAN AND MOSHE SILBER,** | **MAGISTRATE JUDGE NORTH** |
| **Defendants.** | |

### DECLARATION OF ALBERTO SANCHEZ

I, Alberto Sanchez, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following is true and correct:

1.      I am over the age of twenty-one (21). I am fully competent and capable of making this declaration.

2.      I am employed by KeyBank National Association ("**KeyBank**") with the title of Vice President in KeyBank's Asset Recovery Group.

3.      In my role as Vice President for KeyBank, I am responsible for the collection of the amounts owed to KeyBank by Defendants Lakewood Pointe Apts LLC ("**Lakewood**"), Fredrick Schulman ("**Schulman**"), and Moshe Silber ("**Silber**").

4.      I have knowledge of the facts and statements contained herein based upon my own personal knowledge or my review of the business records of KeyBank. All of the facts and statements contained herein are true and correct.

5.      This declaration is offered in support of the Motion for Default Judgment filed in the captioned case by KeyBank.

1

#103371318v1

6.      True and correct copies of the documents referenced herein are attached hereto as exhibits with the exhibit numbers referenced below.

**A.    The Loan/Promissory Note**

7.      KeyBank is the holder for value of that certain Interim Loan Agreement dated July 28, 2021 (the "**Interim Loan Agreement**") by and between KeyBank, as lender, and Lakewood, as borrower, as amended by that certain Amendment to Loan Documents dated January 26, 2023 (the "**Loan Agreement Amendment**") by and between KeyBank as lender, Lakewood as borrower, and Silber and Schulman, as guarantors (collectively, with the Interim Loan Agreement, the "**Loan Agreement**") and certain other loan documents from time to time executed and delivered to KeyBank in connection with the Loan (collectively, the "**Loan Documents**"), pursuant to which KeyBank agreed to make, and Lakewood agreed to repay, the loan as more particularly described and subject to the terms and conditions set forth therein (the "**Loan**").[1]

8.      KeyBank is the owner and holder of that certain Promissory Note dated July 28, 2021 (the "**Note**") in the original principal amount of $22,400,000.00 executed by Lakewood in favor of, and payable to the order of KeyBank, evidencing the Loan with interest thereon and payable as provided in the Note and in the Loan Agreement.[2]

9.      "Payment of the Note is governed by the Loan Agreement, the terms of which are incorporated herein by express reference as if fully set forth herein."[3]

10.     The note matured on the "**Maturity Date**," which is defined in the Loan Agreement Amendment as December 31, 2023.[4]

---

[1] **Exhibit 4** (Interim Loan Agreement); **Exhibit 5** (Loan Agreement Amendment).

[2] **Exhibit 6** (Promissory Note).

[3] **Exhibit 6** (Promissory Note, Para. 2).

[4] **Exhibit 6** (Promissory Note, p. 1); **Exhibit 5** (Loan Agreement Amendment, pp. §2.1, §3, §4.3.1).

11.     The principal amount of the Note shall bear interest at the "**Applicable Rate**" as defined in the Interim Loan Agreement.[5] If there is a default under the Note, as defined in Section 4.1 of the Note, then principal balance of the Note shall bear interest at the Default Rate, as defined in the Interim Loan Agreement.

12.     According to §2.2 of the Loan Agreement Amendment, Article 5 of the Interim Loan Agreement governing the calculation of the interest rate was replaced by Exhibit A to the Loan Agreement Amendment.[6] According to §5.1.1 of Exhibit A to the Loan Agreement Amendment, captioned "Applicable Rate," "[u]nless the Default Rate is applicable under the terms of the Loan Documents, and except as otherwise provided in Section 5.1.3, 5.1.4, or 5.1.5, the outstanding principal balance of the Loan will bear interest at the Adjusted Daily Simple SOFR plus the Margin (the 'Applicable Rate')."[7]

13.     The "**Adjusted Daily Simple SOFR**" is defined in Exhibit A to the Loan Agreement Amendment.[8] The "**Margin**" is defined as "2.60 percent (260 basis points) per annum."[9]

14.     As of the December 31, 2023 Maturity Date, the (non-default) interest rate on the Note was 7.99% per annum (SOFR of 5.39% + 2.60%).

15.     The "**Default Rate**" is defined in the Interim Loan Agreement as "[a] rate per annum equal to three percentage points (300 basis points) in excess of the Applicable Rate, or if

---

[5] **Exhibit 6** (Promissory Note, §1).

[6] **Exhibit 5** (Loan Agreement Amendment, §2.2, Exh. A).

[7] **Exhibit 5** (Loan Agreement Amendment, Exh. A, §5.1.1.).

[8] **Exhibit 5** (Loan Agreement Amendment, Exh. A, p. 13).

[9] **Exhibit 5** (Loan Agreement Amendment, Exh. A, p. 13).

#103371318v1

lower, the highest rate permitted by applicable Laws."[10] The Default Rate as of October 31, 2024 was 10.63% per annum (Applicable Rate of 7.63% + 3.00%).

16.    The Applicable Rate and the Default Rate fluctuate on a daily basis, depending on the SOFR for that day.

**B. The Mortgage, Assignments and Security Agreement**

17.    The Loan, including, without limitation, the obligations of Lakewood to KeyBank evidenced by the Note, and the Secured Obligations, as defined below, are secured by, among other things, that certain Mortgage, Assignment of Leases and Rents, Assignment of Contracts and Security Agreement dated July 28, 2021 (the "**Mortgage**") executed by Lakewood in favor of KeyBank before a notary public and recorded September 21, 2021 at N. A. No. 2021-38637, MIN 1370575, official records of Orleans Parish, Louisiana.[11]

18.    Lakewood executed the Mortgage through its Authorized Signatory, Fredrick Schulman, pursuant to a Certificate of Consent to Purchase Member Interests and Enter Loan attached to the Mortgage.[12]

19.    According to the Mortgage Certificate from the Orleans Parish Clerk of Court, KeyBank has a first ranking and priming mortgage on the Lakewood property.[13]

20.    In the Mortgage, the Secured Obligations include, among other things, (i) all obligations due and owing under the Note, (ii) the payment and performance of all other obligations of Lakewood under the Mortgage and the Loan Documents, and (iii) the payment and performance of all other obligations that Lakewood may agree to pay and/or perform for the benefit

---

[10] **Exhibit 4** (Interim Loan Agreement, p. 3).

[11] **Exhibit 7** (Mortgage).

[12] **Exhibit 7** (Mortgage).

[13] **Exhibit 8** (Mortgage Certificate).

4

#103371318v1

of KeyBank pursuant to an obligation secured by the Mortgage and described therein (collectively, the "**Secured Obligations**").[14]

21.    In the Mortgage, in order to secure the full and prompt payment of the Secured Obligations, and the performance of the covenants and agreements of Lakewood (as Mortgagor) contained in the Loan Documents, including the Mortgage, Lakewood (as Mortgagor) mortgaged, affected, pledged, hypothecated, collaterally assigned and granted a mortgage and/or security interest in all of Lakewood's right, title and interest in the following described property (collectively, the "**Property**" or the "**Property, the Personal Property, the Leases and Rents and the Proceeds**"), including without limitation, the real (immovable) property, improvements and personal (movable) property that bear, and are located at, the municipal address of 7001 Martin Drive, New Orleans, Louisiana 70126, which property is more particularly described in the Mortgage; [15] and "[a]ll products, profits, rents (together, the "**Rents**"), proceeds of, additions and accretions to, substitutions, and replacements for, and changes in any of the property described" in the Mortgage.[16]

22.    The movable property in which Lakewood granted KeyBank a security interest is listed in Sections 1.1.3 through 1.1.19 of the Mortgage.[17]

23.    The security interests granted in the Mortgage on the personal and movable property, including, without limitation, the assignment of contracts set forth in the Mortgage, were perfected by the filing of that certain UCC-1 Financing Statement on September 21, 2021 with the Clerk of Court of Orleans Parish, Louisiana and included in the Louisiana Secretary of State Master

---

[14] **Exhibit 7** (Mortgage, §§ 1.1.1, 1.2).

[15] **Exhibit 7** (Mortgage, §§ 1.1.1 -- 1.1.19).

[16] **Exhibit 7** (Mortgage, § 1.1.19).

[17] **Exhibit 7** (Mortgage, §§ 1.1.1 -- 1.1.19).

#103371318v1

UCC Index as UCC Instrument No. 36-2021-38638 and that certain UCC-1 Financing Statement filed on July 30, 2021 with the Delaware Department of State as UCC Filing No. 2021-6014188, which UCC-1 Financing Statements encumber all assets in relation to the Property, as described below.[18]

24.    The movable property in which Lakewood granted KeyBank a security interest is described in Exhibit B to the Louisiana UCC-1 financing statement.[19]

25.    This is the same movable property that Lakewood granted a security interest to KeyBank in sections 1.1.3 through 1.1.19 in the Mortgage.[20]

26.    The only UCC-1 Financing Statement filed of record in the Louisiana Secretary of State Master UCC Index is the UCC-1 Financing Statement filed by KeyBank described above. As such, KeyBank has a first-ranking security interest in the movable property of Lakewood described in Exhibit B to the UCC-1 Financing Statement attached as **Exhibit 9.**

27.    In addition, section 2.3 of the Mortgage provides as follows: [21]

---

[18] **Exhibit 9** (UCC-1 Financing Statement filed in Delaware).

[19] **Exhibit 9-1** (UCC-1 Financing Statement filed in Louisiana).

[20] **Exhibit 7** (Mortgage, §§1.1.1 - 1.1.19).

[21] **Exhibit 7** (Mortgage, §2.3).

#103371318v1

> **2.3    Lender's Rights After Event of Default.** If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Property directly, by a keeper, or by any other manner or proceeding permitted by the laws of the Property jurisdiction, Lender shall immediately have all rights, powers and authority granted to Mortgagor under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Mortgagor authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Property to pay all Rents to, or as directed by, Lender, and Mortgagor shall, upon Mortgagor's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Mortgagor hereby irrevocably authorizes Lender to give, notice to all tenants of the Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Mortgagor any amounts that are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

28.    In sum, under section 2.3, if an Event of Default has occurred and is continuing, KeyBank shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid, from the Property, and Lakewood authorizes KeyBank to collect, sue for and compromise Rents and directs each tenant of the Property to pay all rents to KeyBank.

29.    Further, section 2.4 of the Mortgage provides as follows: [22]

> **2.4    Lender's right to Enter Property After Event of Default.** If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Mortgagor, and even in the absence of waste, enter upon, take and maintain full control of the Property, and may exclude Mortgagor and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Property and the execution or termination of contracts providing for the management, operation or maintenance of the Property, for the purposes of enforcing this pledge of Rents, protecting the Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

30.    In sum, under section 2.4, if an Event of Default has occurred and is continuing, KeyBank may enter upon, take and maintain full control of the Property, and may exclude

---

[22] **Exhibit 7** (Mortgage, §2.4).

#103371318v1

Lakewood therefrom, in order to perform all acts that KeyBank, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Property, including the execution or termination of contracts providing for the management, operation or maintenance of the Property.

**C.    The Limited Recourse Guaranty**

31.    Schulman and Silber ("**Guarantors**") executed a Limited Recourse Guaranty ("**Guaranty**") dated July 28, 2021 in favor of KeyBank.[23] The Guaranty states in part as follows:

> **2.    Unconditional Guaranty of Payment and Performance.** Subject to the limitations on personal recourse set forth in Section 3, Guarantor absolutely, unconditionally, and irrevocably guarantees the following obligations (collectively, the "*Guaranteed Obligations*"):
>
> **2.1**    the full and prompt payment of all amounts payable by Borrower to Lender under the Loan Documents;
>
> **2.2**    the prompt payment of all obligations of Borrower to Lender arising from any interest rate hedging program, including, without limitation, any interest rate swap, cap, or such other interest rate protection product, whether now existing or entered into hereafter (each an "*Interest Rate Protection Product*"), including, without limitation, any Cash Settlement Amount or any payments on Early Termination payable by Borrower under any Swap Transaction or Confirmation; *provided, however*, the term "Interest Rate Protection Product" shall not include any interest rate swap, cap, or other interest rate protection product if, at the time Borrower enters into any such product, it is unlawful for Guarantor to guarantee the obligations of Borrower thereunder. Capitalized terms used in this subsection 2.2 but not otherwise defined in this Guaranty or in the Loan Agreement are defined in the *2006 ISDA Definitions* published by the International Swap and Derivatives Association, Inc.; and
>
> **2.3**    the full, complete, and punctual performance and satisfaction of all of Borrower's obligations under the Loan Documents and any Interest Rate Protection Product.

32.    In summary, Guarantors "absolutely, unconditionally, and irrevocably guarantee[d]" payment of all amounts payable by Lakewood to KeyBank under the Loan Documents and any Interest Rate Protection Product.

33.    Section 3 of the Guaranty titled "Recourse Limitations" states as follows: "Subject to the exceptions described in Sections 3.1 (the Springing Recourse Events) and 3.2 (the Recourse Events), and without in any way limiting Lender's right to pursue judgments that may be necessary

---

[23] **Exhibit 10** (Limited Recourse Guaranty).

or appropriate to foreclose its liens against or otherwise realize the value of any Collateral, Lender's right to pursue any judgment of personal liability against Guarantor hereunder, including any deficiency judgment, shall be limited to the Limited Recourse Amount."[24]

34.    The "Limited Recourse Amount" is defined in §1.6 of the Guaranty as follows:[25]

> **1.6    *"Limited Recourse Amount"*** means an amount equal to the total of: (i) Twenty Five percent (25%) of the principal amount of the Indebtedness (whether outstanding or undisbursed) as of the occurrence of the Event of Default forming the basis for a demand by Lender hereunder, *plus* (ii) all amounts in excess of the maximum principal amount of the Note advanced to cure any Default or Event of Default or to protect the value or priority of Lender's security for the Loan, *plus* (iii) all interest due Lender under the Loan Documents at the Applicable Rate(s) or Default Rate, as applicable, *plus* (iv) all Enforcement Costs.

35.    In sum, the Limited Recourse Amount is an amount equal to 25% of the principal amount of the indebtedness, plus (1) all amounts in excess of the maximum principal amount of the Note advanced to cure any Default or Event of Default or to protect the value or priority of Lakewood's security for the Loan, plus (2) all interest due Lakewood under the Loan Documents at the Applicable Rate or Default Rate.

36.    Guarantors also executed that certain Performance and Completion Guaranty dated as of January 26, 2023, in favor of KeyBank (the **"Completion Guaranty,"** in which Guarantors agreed to make certain renovations, restorations, and repairs to the Property, as more fully set forth therein.[26] The Completion Guaranty and the Limited Recourse Guaranty may be collectively referred to as the **"Guaranties"**).

37.    A    review    of    the    Servicemembers'    Civil    Relief    Act    website (https://scra.dmdc.osd.mil/scra/#/login) indicates that neither Silber nor Schulman are currently serving in military service or on active duty.

---

[24] **Exhibit 10** (Limited Recourse Guaranty, §3).

[25] **Exhibit 10** (Limited Recourse Guaranty, §1.6).

[26] **Exhibit 11** (Completion Guaranty).

#103371318v1

EXHIBIT 3

EXHIBIT 3

**D.    The Defaults**

38.    Lakewood, and in turn, the Guarantors, are in default under the terms and conditions of the Loan Agreement, Note, Mortgage and Guaranties because Lakewood and Guarantors have failed to, among other things, pay all unpaid principal and accrued interest by the December 31, 2023 Maturity Date of the Note (the "**Maturity Date**").

39.    In addition, Lakewood has breached a number of financial and performance-related covenants, each of which constitute events of default under the Loan Agreement, including, but not limited to (i) the failure to achieve a Debt Yield Ratio, as defined in the Loan Agreement, of 8.9% for the period ending October 31, 2023; (ii) the failure to provide proof that certain repair covenants had been satisfied; and (iii) the failure to furnish reasonable financial information in response to KeyBank's written request on January 18, 2024.

40.    As a result of the aforementioned defaults, by letters dated February 9, 2024, KeyBank demanded payment from Lakewood and the Guarantors of all amounts due under the Note, and, in turn, the Mortgage and the Guaranties.[27]

41.    Despite Lender's demand, to date, Lakewood and the Guarantors have failed to pay the amounts due under the Note, and, in turn, the Mortgage and the Guaranties. Consequently, Lakewood is in default under the Loan Agreement, Note, and, in turn, the Mortgage, and the Guarantors are in default under the Guaranties.

**E.    Enforcement Costs**

42.    The Interim Loan Agreement, Note, and Mortgage each provide that Lakewood agrees to pay the attorneys' fees and other expenses incurred by KeyBank in enforcing its rights under the Loan Agreement, Note, and the Mortgage, including without limitation, the costs

---

[27] **Exhibit 12** (Feb. 9, 2024 Notice of Default).

associated with foreclosing on the Mortgaged Property, sequestering the Mortgaged Property, and expenses related to retention of the keeper to manage the Mortgaged Property (the "**Enforcement Costs**").[28] In the Guaranties, the Guarantors agreed to reimburse KeyBank for the Enforcement Costs.[29]

43.    KeyBank has engaged counsel to (a) enforce KeyBank's rights under the Loan Agreement, Note, Mortgage, and Guaranties, and (b) institute these proceedings to collect the amounts due thereunder, and seek recognition of and enforce the Mortgage, including the assignment and pledge of leases and rents and the security interests thereunder.

44.    Accordingly, KeyBank is entitled to recover from Lakewood and the Guarantors the reasonable attorneys' fees, court costs and other expenses that it incurs in connection with its collection efforts, including the filing and prosecution of these proceedings, which are included in the Enforcement Costs.

**F.    The Amounts Due**

45.    As of October 31, 2024, exclusive of Enforcement Costs, Lakewood owes to KeyBank the aggregate amount of $24,251,182.52 under the Loan Documents, including the following:

| Principal | $ 22,100,700.00 |
|---|---|
| Accrued Interest through February 9, 2024 at the Applicable Rate | $ 348,392.98 |
| Default Interest from February 10, 2024 to October 31, 2024 | $ 1,802,089.54 |
| **Total** | $ 24,251,182.52 |

---

[28] **Exhibit 6** (Promissory Note, §4.9); **Exhibit 7** (Mortgage, **§7.3.4**); **Exhibit 4** (Interim Loan Agreement, p. 6, §7.2.1, §16).

[29] **Exhibit 10** (Limited Recourse Guaranty, §15).

#103371318v1

46.     In addition, KeyBank is entitled to recover the Enforcement Costs from Lakewood, Schulman and Silber, in solido.

47.     Moreover, KeyBank is or will be owed interest at the Note's Default Rate and late charges accruing after October 31, 2024, together with all Enforcement Costs that continue to accrue, until all of the obligations of Lakewood are paid in full (collectively, such amount is the "**Indebtedness**").

48.     In addition, under the Limited Recourse Guaranty, Schulman and Silber's guaranty is limited to the "Limited Recourse Amount."[30]

49.     The "'Limited Recourse Amount' means an amount equal to the total of: (i) Twenty Five percent (25%) of the principal amount of the Indebtedness (whether outstanding or undisbursed) as of the occurrence of the Event of Default from the basis for a demand by Lender hereunder, *plus* (ii) all amounts in excess of the maximum principal amount of the Note advanced to cure any Default or Event of Default or to protect the value or priority of Lender's security interest for the Loan, *plus* (iii) all interest due Lender under the Loan Documents at the Applicable Rate(s) or Default Rate, as applicable, *plus* (iv) all Enforcement Costs." [31]

---

[30] **Exhibit 10** (Limited Recourse Guaranty, §3).

[31] **Exhibit 10** (Limited Recourse Guaranty, §1.6, §3).

13

EXHIBIT 3
EXHIBIT 3

50.    Thus, as of October 31, 2024, the Guarantors (Silber and Schulman) are jointly and severally liable to KeyBank in the amount of $7,675,657.52, plus interest continuing to accrue at the Default Rate until paid in full, plus Enforcement Costs, as follows:

| | |
|---|---|
| Principal (25%) | $  5,525,175.00 |
| Accrued Interest through October 31, 2024 | $  2,150,482.52 |
| Total | $ 7,675,657.52 |

Executed in ___Pittsburgh___, Pennsylvania, this _9th_ day of ___December___, 2024.

_Alberto Sanchez_
**ALBERTO SANCHEZ**

14